687 F.2d 518
 John CIAMPA, et al., Plaintiffs, Appellees,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellee,
Commissioner of the Department of Public Welfare,
Commonwealth of Massachusetts, Defendant, Appellant.
John CIAMPA, et al., Plaintiffs, Appellees,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant, Appellant.
 Nos. 82-1145, 82-1175.
 United States Court of Appeals,
First Circuit.
 Argued May 6, 1982.
Decided Aug. 27, 1982.
 
 Marc Richman, Attorney, Appellate Staff, Civil Div., U. S. Dept. of Justice, Washington, D. C., with whom William F. Weld, U. S. Atty., Boston, Mass., J. Paul McGrath, Asst. Atty. Gen., and Anthony J. Steinmeyer, Atty., Appellate Staff, Civil Div., U. S. Dept. of Justice, Washington, D. C., were on brief, for Secretary of Health and Human Services.
 Joan C. Stoddard, Asst. Atty. Gen., Government Bureau, with whom Francis X. Bellotti, Atty. Gen., Boston, Mass., was on brief, for Thomas H. Spirito, etc.
 Peter V. Berns, Washington, D.C., with whom Gary Bellow, Boston, Mass., was on brief, for plaintiffs, appellees.
 Before PHILLIPS,* Senior Circuit Judge, BOWNES and BREYER, Circuit Judges.
 BREYER, Circuit Judge.
 
 
 1
 This case involves interpreting the highly technical (and aptly named) "Pickle Amendment" to the Social Security Act, 42 U.S.C. § 1396a (note). This amendment restores Medicaid benefits to certain persons who at one time received both Supplementary Security Income ("SSI") and Old Age Survivors and Disability Insurance ("OASDI"). The appellants, state and federal governments, claim that these certain persons include only those whom an OASDI cost-of-living increase would otherwise cause to lose the Medicaid benefits. The appellees, a class of social security recipients, claim that the amendment also covers those who would qualify for the Medicaid benefits but for the OASDI cost-of-living increase. In essence, we are asked to decide whether the Pickle Amendment uses a "but for" test or a narrower test of "causation" in selecting its beneficiaries. And our decision will determine whether appellees, and others in their class, receive the more generous Medicaid benefits given to SSI recipients, or the less generous Medicaid benefits available to those who do not receive SSI. The district court, 511 F.Supp. 670 decided that the appellees' interpretation of the statute was correct. We agree.
 
 
 2
 * To begin to understand this case, one must first have in mind the basic functions of the three government programs at issue. SSI, 42 U.S.C. § 1381 et seq., is a government assistance program of last resort. It helps the aged, blind and disabled poor. The federal government administers the program, paying each covered person enough money to bring his income up to "minimum" level. This "minimum" equals at least a nationally uniform, federally determined level. If a state is willing to pay the added cost, this "minimum" may be set higher. In Massachusetts, for example, the SSI minimum equals the federal minimum plus certain "optional state supplements" that the law allows. See 42 U.S.C. § 1382e; Constance v. Secretary of Health & Human Services, 672 F.2d 990, 991-92 (1st Cir. 1982).
 
 
 3
 OASDI, 42 U.S.C. § 401 et seq., is what is popularly known as "Social Security." It provides workers (or their families) cash payments when they retire, become disabled, or die. Mathews v. DeCastro, 429 U.S. 181, 185-86, 97 S.Ct. 431, 434-435, 50 L.Ed.2d 389 (1976). It is primarily an insurance program. Thus, the amount of payment depends in part upon how much a covered worker and his employers have previously paid into the system.
 
 
 4
 Medicaid, 42 U.S.C. § 1396 et seq., is a federal program that reimburses states for providing medical care to those who cannot afford it. See generally Harris v. McRae, 448 U.S. 297, 301, 100 S.Ct. 2671, 2680, 65 L.Ed.2d 784 (1980); Preterm v. Dukakis, 591 F.2d 121 (1st Cir.), cert. denied, 441 U.S. 952, 99 S.Ct. 2182, 60 L.Ed.2d 1057 (1979). For purposes of this case its most important feature is that anyone who qualifies for SSI automatically qualifies for Medicaid. 42 U.S.C. § 1396a(a)(10)(A). Cf. id. § 1396a(a)(10)(C); Schweiker v. Hogan, --- U.S. ----, ---- & n.19, 102 S.Ct. 2597, 2606 & n.19, 73 L.Ed.2d 227 (1982). But one who does not qualify for SSI (with certain exceptions not relevant here) does not qualify for Medicaid unless he is "medically needy"-i.e. unless his medical expenses are so great that his remaining income would be no more than four-thirds of the amount that would qualify him for state welfare assistance (under Aid to Families with Dependent Children, 42 U.S.C. § 601 et seq.). See 42 U.S.C. §§ 1396a(a)(10)(C), 1396b(f) (1). Leaving aside the technicalities, a person who qualifies to receive even one penny of SSI will automatically receive Medicaid benefits; should he fail to qualify for SSI, however, by even one penny, he will not receive Medicaid unless he runs up fairly significant medical bills. That fact lies at the heart of this case.
 
 
 5
 These different aid programs interact in other ways directly relevant to the case at hand. For one thing, a person can receive both OASDI and SSI. This could happen where a person's OASDI, which depends in part upon prior "contributions," is less than the eligibility level for SSI. It could also happen where the applicable SSI "minimum" includes an "optional state supplementary payment" sufficient to raise the SSI threshold above the level of OASDI. The situation of the Ciampas in November 1978 illustrates the point. They were entitled to receive $462.61 per month in SSI (consisting of both a federal and a state payment); they received $440.30 in OASDI; so, if they had received no other income, and if all their OASDI "counted" when it came to computing SSI, the Ciampas would have been entitled to $22.31 in SSI-the amount needed to bring their income up to the SSI "minimum." (Because they did receive other income, and because not all of their income "counted" in the SSI calculation, see p. 9, infra, the Ciampas in fact received a different amount of SSI.)
 
 
 6
 In fact, a person might be eligible for SSI even if his income is a little higher than the "minimum." This is so because some income is "disregarded"-or not counted-for purposes of calculating SSI. The most important "disregard" for our purposes is the general "$20 disregard"-the provision that says $20 per month of outside income will be ignored in calculating eligibility for, and the amount of, SSI. 42 U.S.C. § 1382a(b)(2) (A). Thus, if the SSI "minimum" were $462.61, the Ciampas would be eligible for some SSI payment as long as their outside income was less than $482.61 per month, for $20 of that outside income would be disregarded.
 
 
 7
 For another thing, both OASDI and SSI payment levels rise each year to take account of inflation. The OASDI payment (which is wholly federal) and the federal component of the SSI "minimum" rise by exactly the same percentage. 42 U.S.C. §§ 415(i), 1382f. The $20 income disregard, however, does not expand with inflation. Nor, unless the state so provides, does the state component of SSI. Cf. Reichenthal v. Harris, 492 F.Supp. 637, 640 (E.D.N.Y.1980); 42 U.S.C. § 1382g.
 
 
 8
 The preceding, somewhat oversimplified, account of the payment system suffices to understand the problem that gave rise to the Pickle Amendment. Simply put, the problem was that cost-of-living increases in OASDI were making some people ineligible for SSI. In and of itself, of course, the loss of SSI was not particularly significant. What was significant was the loss of automatic Medicaid that accompanied the loss of SSI. The Medicaid benefits were quite valuable-far more so than the small increases in OASDI that led to their being cut off-and it struck Congress as anomalous, to say the least, that a benefit given with one hand (a cost-of-living increase) led to the taking away of a more valuable benefit ("automatic" Medicaid) with the other.
 
 
 9
 How was it possible for a OASDI increase to result in a loss of SSI? One explanation lies in the fact that the state components of SSI were not indexed to inflation as were the federal component and OASDI. Thus, while the federal part of SSI was required to rise as rapidly as OASDI, the state part was not. An OASDI increase could therefore raise a recipient's outside income above the less rapidly rising SSI "minimum" in his state.
 
 
 10
 Another explanation, and the only one that Congress appears to have considered, lies in the unchanging $20 SSI disregard. This provision was such that even where SSI and OASDI levels rose by exactly the same percentage (as they would in a state that either had no program of supplementation or that indexed its supplements to the federal cost-of-living increases), a person might still lose SSI eligibility when OASDI and SSI went up. This consequence arises from a simple mathematical fact: changing two numbers (the OASDI payment and the SSI "minimum") by the same percentage will not ordinarily change their relationship significantly; but this change will matter a great deal if one is interested in comparing the difference between the two numbers to a different and fixed number (the $20 "disregard"). Suppose, for example, that (a hypothetical) Smith's OASDI payment, his only outside income, is $301 per month and the SSI minimum is $300. Using an extreme number for illustrative purposes, suppose inflation is 1,000 percent. Smith's OASDI payment then would become $3,010 and the SSI minimum would become $3,000. Smith would continue to qualify for SSI. But what if Smith's OASDI were initially $303 per month, instead of $300? He would still qualify for SSI before our 1,000 percent inflation, because after applying the $20 disregard, his outside income would be only $283 (not $303) for SSI purposes. After the 1,000 percent inflation, however, Smith's OASDI income would be $3,030 per month; the SSI minimum would rise to $3,000 per month; but, as long as the $20 disregard figure stays the same, Smith would be considered to have $3,010 outside income-$10 above the new SSI "minimum." He would no longer qualify for SSI. While the actual cases before us involve only pennies, or a few dollars (because inflation has not been 1,000 percent), the principle is the same. No one is particularly concerned about the few SSI pennies or dollars that a potential recipient might lose. At issue here, and what concerned Congressman Pickle, is the more serious consequence of not qualifying for SSI: the loss of "automatic" Medicaid. Congressman Pickle thus recognized that, in some cases, Congress's effort to prevent inflation from hurting OASDI and SSI recipients could itself hurt the recipient by disqualifying him for automatic Medicaid.
 
 
 11
 As the above example suggests, Congressman Pickle felt the problem was caused by the $20 disregard. With admirable directness, he went to the heart of the matter and proposed an amendment-"Pickle I"-that would have indexed the $20 disregard to inflation as well. 122 Cong.Rec. 27852 (August 26, 1976). This would have cured the problem. In the example given above, a 1,000 percent inflation would increase Smith's monthly OASDI to $3,030. It would increase the SSI minimum to $3,000. Under "Pickle I" the disregard would have been increased as well to $200. Smith's income for SSI purposes would have been considered to be $2,830; and he would have qualified for SSI.
 
 
 12
 Of course, "Pickle I" would have done more than just prevent losses in Medicaid. It would, in effect, have indexed all outside income for eligibility purposes as well. Thus, if inflation made $10 in the future worth what $1 is worth today, "Pickle I" would have had SSI treat the $10 in the future just as it treats $1 today. Without "Pickle I," inflation will make it more and more difficult to qualify for SSI, for the $20 disregard will become ever less meaningful as the value of $20 in real terms becomes ever smaller.
 
 
 13
 Whether because it wished to restrict SSI eligibility slightly, or because it wished to do away slowly with the $20 disregard, or for some other reason, Congress did not adopt "Pickle I." "Pickle I" passed the House and was reported to the Senate. 122 Cong.Rec. 28288 (August 30, 1976). It was then referred to the Committee on Finance, id. at 28618, where it foundered. An amendment with a similar purpose was offered in its place by Senator Bentsen. That amendment, in turn, was adopted in conference and eventually became the law that is now known as the Pickle Amendment ("Pickle II"). Id. at 33264, 35301. Considerably longer and more complicated than its predecessor, "Pickle II" reads as follows:
 
 
 14
 PRESERVATION OF MEDICAID ELIGIBILITY FOR INDIVIDUALS WHO CEASE TO BE ELIGIBLE FOR SUPPLEMENTAL SECURITY INCOME BENEFITS ON ACCOUNT OF COST-OF-LIVING INCREASES IN SOCIAL SECURITY BENEFITS
 
 
 15
 In addition to other requirements imposed by law as a condition for the approval of any State plan under title XIX of the Social Security Act (Medicaid), there is hereby imposed the requirement ... that medical assistance under such plan shall be provided to any individual, for any month after June 1977 for which such individual is entitled to a monthly insurance benefit under title II of such Act (OASDI) but is not eligible for benefits under title XVI of such Act (SSI), in like manner and subject to the same terms and conditions as are applicable under such State plan in the case of individuals who are eligible for and receiving benefits under such title XVI for such month, if for such month such individual would be (or could become) eligible for benefits under such title XVI except for amounts of income received by such individual and his spouse (if any) which are attributable to increases in the level of monthly insurance benefits payable under title II of such Act which have occurred pursuant to section 215(i) of such Act, in the case of such individual, since the last month after April 1977 for which such individual was both eligible for (and received) benefits under such title XVI and was entitled to a monthly insurance benefit under such title II, and, in the case of such individual's spouse (if any), since the last such month for which such spouse was both eligible for (and received) benefits under such title XVI and was entitled to a monthly insurance benefit under such title II. Solely for purposes of this section, payments of the type described in section 1616(a) of the Social Security Act or of the type described in section 212(a) of Public Law 93-66 shall be deemed to be benefits under title XVI of the Social Security Act.
 
 
 16
 42 U.S.C. § 1396a (note). As we read this statute, its three key features are the following: 1) It applies to persons who were eligible for (and received) SSI, and who were entitled to receive OASDI, during some month after April 1977; 2) It provides these persons with the Medicaid benefits that an SSI beneficiary would receive, but it does not provide any other SSI benefits; 3) It provides these benefits for "any month after June 1977" as to which "such individual would be (or could become) eligible" for SSI benefits "except for amounts of income ... attributable to increases" in OASDI, (which increases have occurred since the most recent month satisfying the first condition above).
 
 
 17
 After the passage of this legislation both the federal government and the Commonwealth of Massachusetts enacted regulations implementing this amendment. Those regulations restrict its applicability to persons who have become ineligible for SSI "because of" or "solely because of" OASDI cost-of-living increases. 42 C.F.R. § 435.155(a)(2); Massachusetts Public Assistance Policy Manual, Ch. I, Sec. F, page 1 (§ (b)(4)), and Ch. IV, Sec. B, page 1 (§ (b) (4)), amending 106 C.M.R. §§ 325.030(B) and 338.020(B), respectively. Appellees attack these regulations.
 
 
 18
 Appellees argue that the regulations, but not the statute, are written to exclude persons who lost their SSI eligibility because of increases in other than OASDI cost-of-living increases, but whose eligibility would be restored by deducting the OASDI cost-of-living increase. The Ciampas, for example, in November 1978 received $481.30 income. (Of this, $440.30 was OASDI, and $41 was veterans' benefits.) The applicable SSI "minimum" in Massachusetts was $462.61. After subtracting the $20 "disregard" from $481.30, the Ciampas qualified for an SSI payment of $1.31; and they consequently received "automatic" Medicaid. In December, the Ciampas' veterans' benefits rose by $3, and they lost their SSI eligibility. But by July 1980 OASDI and the federal component of SSI had increased by about 10 percent. The Ciampas then received $528 ($484 OASDI and $44 veterans' benefits); and the SSI minimum in Massachusetts increased to $494.50 (less than 10 percent, because the state component did not increase by 10 percent). If their OASDI cost-of-living increase of $43.70 as well as the $20 "disregard" is subtracted from the $528, the resulting figure of $464.30 is below the new SSI "minimum." Had the cost-of-living increases preceded the $3 increase in veterans' benefits, the Ciampas would have qualified under the government's interpretation of the Pickle Amendment, for, in the government's view, the OASDI cost-of-living increase would have "caused" the Ciampas to lose SSI. Because the veterans' benefit increases came first, however, the government claims that the Pickle Amendment does not apply, since the veterans' benefit increase, not the OASDI cost-of-living increase, "caused" the loss of SSI benefits.
 
 
 19
 The Ciampas and other appellees similarly situated argue that they qualify for Medicaid under the terms of the Pickle Amendment and that temporal sequences, or "causation" of the type just described, are irrelevant. After working our way through the various complicated numerical examples and arguments in the briefs, we cannot find any very good reason for departing from the statute's language to impose such a "temporal sequence" requirement or for importing into the statute any "causality" requirement.
 
 II
 
 20
 We begin our statutory analysis with a very simple fact. The Pickle Amendment, while wordy, lays down a clear, precise rule; and, if words are given their ordinary meaning, appellees fall within it. The amendment says nothing about causality; it uses a "but for" test. It requires states to provide Medicaid to any individual i) "for any month after June 1977 for which (he) is entitled to (OASDI) but ... not (SSI)," ii) if "for such month (he) would be ... eligible for (SSI) except for ... income ... attributable to increases in (OASDI) ... which have occurred since the last month after April 1977 for which (he) was both eligible for (and received) (SSI) and was entitled to (OASDI)." The Ciampas are i) entitled to OASDI but not SSI for the month of July 1980, and ii) for the month of July 1980, the Ciampas would be eligible for SSI "except for" income attributable to OASDI cost-of-living increases since November 1978, the last month the Ciampas were both eligible for and received SSI. The statute fits like a glove.
 
 
 21
 The government's argument that the words "attributable to" suggest a causal connection is disingenuous, for those words modify "income." They pick out which income (namely, "OASDI increase" income) is to be disregarded in determining whether the claimant would otherwise be eligible for SSI. The relevant words-describing the relation of this income to eligibility-are "except for." These words suggest a mechanical "but for" test; they do not suggest the type of "causal" requirement that the government has imported into its regulations.
 
 
 22
 Faced with a statute containing "plain and unambiguous language," a court should ordinarily simply "enforce it according to its terms," Massachusetts Financial Services, Inc. v. SIPC, 545 F.2d 754, 756 (1st Cir. 1976) (quoting Caminetti v. United States, 242 U.S. 470, 485, 37 S.Ct. 192, 194, 61 L.Ed. 442 (1917)), cert. denied, 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977). To be sure, when called upon to interpret a statute, courts have "some 'scope for adopting a restricted rather than a literal or unusual meaning of its words where acceptance of that meaning would lead to absurd results ... or would thwart the obvious purpose of the statute' ... (b)ut it is otherwise 'where no such consequence would follow and where ... it appears to be consonant with the purposes of the Act....' " Trans Alaska Pipeline Rate Cases, 436 U.S. 631, 643, 98 S.Ct. 2053, 2061, 56 L.Ed.2d 591 (1978); Commissioner v. Brown, 380 U.S. 563, 571, 85 S.Ct. 1162, 1166, 14 L.Ed.2d 75 (1965) (citations omitted). Where a statute's scope is narrow, its language precise, and its application foreseeably mechanical, it would take a strong showing of "rare and exceptional circumstances" to convince us that it should not be applied as written. Howe v. Smith, 452 U.S. 473, 483, 101 S.Ct. 2468, 2475, 69 L.Ed.2d 171 (1981); TVA v. Hill, 437 U.S. 153, 187 n.33, 98 S.Ct. 2279, 2298 n.33, 57 L.Ed.2d 117 (1978); Barry v. St. Paul Fire & Marine Insurance Co., 555 F.2d 3, 7 (1st Cir. 1977), aff'd, 438 U.S. 531, 98 S.Ct. 2923, 57 L.Ed.2d 932 (1978); Massachusetts Financial Services, Inc. v. SIPC, 545 F.2d at 757.
 
 
 23
 The government has sought to make such a showing here, but, in our view, it has failed. We summarize briefly the government's arguments and the responses that might be made to them. In doing so, we do not find that the government's statements are false or its logic invalid; we conclude only that its arguments do not warrant our authorizing a departure from the clear and precise language of the statute.
 
 
 24
 First, the Commonwealth points to the title of the statute:
 
 
 25
 Preservation of Medicaid Eligibility for Individuals who Cease to be Eligible for Supplemental Security Income Benefits on account of Cost-of-Living Increases in Social Security Benefits
 
 
 26
 Pub.L.No. 94-566, § 503, 90 Stat. 2685 (1976) (emphasis added). It argues that this title, coupled with statements of legislators that "Pickle II" protected those who lost SSI Medicaid "solely" because of cost-of-living increases, see, e.g., 122 Cong.Rec. 35153 (Oct. 1, 1976) (remarks of Congressman Corman); H.R.Rep.No.1745, 94th Cong., 2d Sess. (1976), reprinted in 1976 U.S.Code Cong. & Admin.News 6032, 6047 (Conference Report Appendix), suggests that "Pickle II" applies only to those actually removed from SSI (and "automatic" Medicaid) by an OASDI cost-of-living increase.
 
 
 27
 The appellees state, in response, that, in using the word "solely," the legislators were contrasting "Pickle II" with "Pickle I," which attacked the problem by indexing the $20 "disregard." "Pickle I" would have prevented losses in SSI due to small increases in any form of outside income. "Pickle II" focuses solely on cases in which OASDI cost-of-living increases lead to such losses. Moreover, "Pickle II" does not restore SSI but limits its protection to the restoration of Medicaid benefits. Appellees also note that a statute's scope can extend beyond the particular examples used by legislators in debate and beyond the examples suggested by the title. See, e.g., United States v. Culbert, 435 U.S. 371, 98 S.Ct. 1112, 55 L.Ed.2d 349 (1978) (despite emphasis on "racketeering" in congressional debate, such need not be shown to make out a violation of the Hobbs Act, 18 U.S.C. § 1951). Indeed, the Commonwealth itself goes beyond the particular examples raised in debate, for it applies "Pickle II" to those who lose SSI eligibility, "not because of the $20 disregard" problem, but because of the "state indexing" problem, see p. 521, supra -though the "state indexing" problem was never mentioned in debate or considered by the legislators. In any event, as appellees point out, a title (and other legislative history) should be used "to resolve ambiguities and not to create them." Massachusetts Financial Services, Inc. v. SIPC, 545 F.2d at 757 n.7; Maguire v. Commissioner, 313 U.S. 1, 9, 61 S.Ct. 789, 794, 85 L.Ed. 1149 (1941) ("title of an act will not limit the plain meaning of the text").
 
 
 28
 Second, the government argues that the purpose of "Pickle II" was to protect the reliance interest of those whom an OASDI cost-of-living increase might suddenly deprive of SSI-type Medicaid. Those who were previously deprived of SSI Medicaid because of changes in other income, not only have less reliance, but they also have enjoyed the use of the other income.
 
 
 29
 Appellees, in response, point to the very small practical effect those differences are likely to make-at least to many in their class. All had received SSI Medicaid at some time after 1977. The fact that they lost it for independent reasons for a few months is not an enormously strong reason for distinguishing them from other "Pickle" people. And, the circumstances of these two classes are often virtually identical. As to the Ciampas, for example, the OASDI cost-of-living increases are not only "necessary" for disqualification (in that the Ciampas would have qualified "except for" it); but sufficient as well. That is to say, the Ciampas' veterans' benefit increase is now irrelevant: the OASDI increase (if not disregarded) would have disqualified the Ciampas even if the veterans' benefit increase had never occurred; and, if the OASDI increase were disregarded, the Ciampas would qualify for SSI.
 
 
 30
 Of course, the "reliance" difference between those of appellees' class and the others may grow as time passes, for the Pickle Amendment, in terms, will apply to persons who have not had SSI-type Medicaid for a longer time. But, the basic purpose of the Amendment is, at a minimum, to help many of those who would qualify for SSI Medicaid "but for" the OASDI cost-of-living increases. We cannot say that it is not "consonant " with that basic purpose, Trans Alaska Pipeline Rate Cases, 436 U.S. at 643, 98 S.Ct. at 2061, to help a few more, whose plight is at least very similar. Moreover, as a practical matter, it will be far easier for the government to obtain corrective legislation, if the "reliance" distinction is of importance to Congress, than for those in appellees' class to obtain corrective legislation, if it is not.
 
 
 31
 Third, the Commonwealth argues that there will be practical difficulties with keeping the records of those who receive SSI Medicaid and then leave the rolls. The appellees respond that the burden will be on the applicant to show that he qualifies. The records, in any event, should be available at the federal level.
 
 
 32
 Our single concern in this respect arises not out of the appellants' briefs, but out of our own reading of the statute. Under "Pickle II," the SSI minimum against which eligibility for Medicaid is tested is always the new, rising minimum. But, by disregarding OASDI cost-of-living increases, the amendment in effect recognizes only the old, low level of OASDI income that existed when the claimant received both SSI and OASDI. It measures the old income level against the new SSI minimum. This old-OASDI/new-SSI gap, in principle, could allow many persons to qualify for SSI-type Medicaid despite outside income-OASDI plus payments from other governmental or private sources-above SSI "minimum" levels. Given a large enough inflation, to the point where the SSI minimum is far above the early level and the OASDI payment consists mostly of an amount attributable to cost-of-living increases, this "problem" could become severe. This problem, however, was not mentioned by the appellants. We do not know if, in the world of complex social security statutes and regulations, it is a real one. We are uncertain whether, or how, the appellants' challenged regulations are related to the problem. And, if it is a "problem," it would seem to call for a legislated solution.
 
 
 33
 Fourth, the appellants argue that this court should defer to the administrative agency's construction of this technical statute dealing with a minor, interstitial matter. See Schweiker v. Hogan, --- U.S. ----, ----, 102 S.Ct. 2597, 2607, 73 L.Ed.2d 227 (1982); Constance v. Secretary of Health and Human Services, 672 F.2d at 995-96. Appellees respond, correctly, that the extent to which a court should defer to an administrative agency's interpretation of a statute is itself a question of congressional intent. Id. at 995. See also Social Security Board v. Nierotko, 327 U.S. 358, 369, 66 S.Ct. 637, 643, 90 L.Ed. 718 (1946). The clear unambiguous language of the statute suggests that Congress did not intend judicial "deference" here to an agency interpretation that runs counter to the language.
 
 
 34
 In sum, the appellants have not demonstrated that either the purpose of the statute or administrative difficulties require us to ignore its unambiguous language. At most, they have shown that the amendment's title and legislative history create an ambiguity of purpose. This in itself is not a sufficient basis for ignoring clear, statutory language. Howe v. Smith, supra; TVA v. Hill, supra; Trans Alaska Pipeline Rate Cases, supra. Cf. Schweiker v. Hogan, --- U.S. at ----, 102 S.Ct. at 2607 (agency defends statute as written; Court agrees, relying heavily on statute's "explicit( )," "literal and clear language."). We therefore give effect to the language of the statute as it is written.
 
 The judgment of the district court is
 
 35
 Affirmed.
 
 
 
 *
 Of the Sixth Circuit, sitting by designation