**Raymon and Joann LYNCH; Charles and Erestine Dauphine; Rose Rosenthal; Sarine Lisberg; Ellen Beezy; Leona H. Allen; William C. Beer; and California Gray Panthers Foundation, Plaintiffs-Appellants, Cross-Appellees,**

v.

**Peter RANK, Director of the Department of Health Services of the State of California; Department of Health Services of the State of California; Michael Franchetti, Director of the State of California; Department of Finance of the State of California, Defendants-Appellees,**

**and**

**Margaret Heckler, Secretary of Department of Health and Human Services, Third Party Defendant Appellee—Cross Appellants.**

Nos. 83–2343, 84–1857.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 12, 1984.

Decided Nov. 14, 1984.

Evelyn R. Frank, Legal Aid Society of Alameda County, Oakland, Cal., Terry B. Friedman, Bet Tzedek Legal Services, Gil Deford, National Senior Citizens Law Center, Byron Gross, Legal Aid Foundation of Los Angeles, Daniel Brzovic, Bet Tzedek Legal Services, Los Angeles, Cal., for plaintiffs-appellants, cross-appellees.

G. Christopher Stoll, Asst. U.S. Atty., Cade Morrow, Asst. Regional Atty., Dept. of Health & Human Services, Catherine M. Van Aken, Deputy Atty. Gen., San Francisco, Cal., for defendants-appellees.

Before WALLACE, FLETCHER and CANBY, Circuit Judges.

CANBY, Circuit Judge:

Plaintiffs are a class of former recipients of Supplemental Security Income (SSI) who challenge two aspects of California's implementation of the so-called Pickle amendment to the Social Security Act (the Act). The district court granted plaintiffs' request for a preliminary injunction, since made permanent, requiring the California Department of Health Services (DHS) to apply a more liberal standard (the "but for" test) than it had been applying to determine which individuals were entitled to the benefits of the Pickle amendment. The district court, however, refused to grant plaintiffs' request for a preliminary injunction enjoining the DHS from deeming the Pickle beneficiary's income and resources to be part of the income and resources of members of the beneficiary's family for purposes of determining the eligibility of those members for Medicaid (the "deeming" requirement). Both sides appeal.

I

Congress adopted the Pickle amendment, 42 U.S.C. § 1396a (note), in order to protect the Medicaid eligibility of certain persons who had formerly received both SSI benefits under Title XVI of the Act, 42 U.S.C. § 1381 et seq., and Old Age, Survivors and Disability Insurance (OASDI) benefits under Title II of the Act, 42 U.S.C. §§ 401–433. SSI is a federally administered program providing financial assistance to aged, blind, and disabled persons whose income and resources are below certain minimum levels. OASDI is more commonly referred to as social security. OASDI

beneficiaries may also be eligible for SSI if their OASDI benefit plus other income is less than the minimum level set for SSI eligibility.

Medicaid (called Medi-Cal in California), 42 U.S.C. §§ 1396–1396p, is a federally assisted, state-administered program of medical assistance provided to families with dependent children and to aged, blind, or disabled persons whose income and resources are insufficient to meet the costs of necessary medical services. 42 U.S.C. § 1396(1). In California, as in many other states, the Medicaid program actually consists of two programs: one for the "categorically needy" and another for the "medically needy." The categorically needy are persons who are receiving cash assistance under either the SSI program or the federally assisted Aid to Families with Dependent Children (AFDC) program, 42 U.S.C. §§ 601–615.[1]

Because categorical Medicaid is tied to SSI eligibility for most aged, blind, or disabled persons, a loss of SSI eligibility could have potentially severe consequences for the affected individual. This result is particularly apparent when the reason for the loss of SSI eligibility is a small increase in income. The loss of minimal SSI benefits in such cases is of no great concern. What was of major concern to members of Congress was that the individual who lost SSI benefits also lost categorical Medicaid benefits, which were often far more valuable than the slight increase in income that precipitated their loss. The loss of Medicaid benefits seemed particularly unfair where the reason for it was an OASDI automatic cost-of-living increase. Although the SSI minimum is increased by the same percentage whenever OASDI benefits are increased for inflation, a cost-of-living increase in OASDI benefits could nevertheless result in a loss of SSI eligibility. There are several ways that this outcome can occur, but the one Congress appeared to have focused on involves the operation of the $20 SSI income disregard. In determining eligibility for and the amount of SSI benefits, the first $20 of OASDI or other income is disregarded. Thus a person may still be eligible for a small SSI benefit although his income exceeds the SSI minimum. However, where that income is OASDI income and there is a cost-of-living increase in OASDI, the increase in the larger OASDI benefit will exceed the increase in the SSI minimum. Because the $20 disregard is not similarly indexed to inflation, the excess OASDI income may reduce the SSI benefit to zero, causing a loss of SSI eligibility and consequent loss of categorical Medicaid.

Congress responded to this problem by enacting the Pickle amendment which is the subject of this law suit.[2] The Pickle amendment requires the states to provide categorical Medicaid to any person who: (1) is entitled to OASDI benefits; (2) once received SSI benefits as well as OASDI benefits; and (3) would be eligible for SSI "except for amounts of income attributable to increases in the level of [OASDI benefits] which have occurred pursuant to [automatic cost-of-living increases in OASDI benefits]."[3] The federal defendant, the Depart-

---

1. All states that elect to participate in the Medicaid program must cover the categorically needy without requiring the recipients to contribute a share of cost. The medically needy, on the other hand, are persons who would be eligible for SSI or AFDC but for the fact that their income or resources are too high, albeit not high enough to enable them to meet their medical expenses. The medically needy, unlike the categorically needy, are required to contribute a share of cost, so that medical assistance is available to the medically needy only for medical expenses in excess of their share of cost. States may choose not to cover the medically needy at all.

2. Congress was probably more concerned about the loss of categorical Medicaid in those states which do not provide Medicaid benefits to the medically needy. Nevertheless, the amendment applies in states with medically needy programs as well as in those that do not.

3. The Pickle amendment, which appellants describe as "undoubtedly one of the longest run-on sentences to be found in the entire United States Code," reads in full as follows:

In addition to other requirements imposed by law as a condition for the approval of any State plan under Title XIX of the Social Security Act, there is hereby imposed the re-

ment of Health and Human Services (HHS), adopted regulations identifying the individuals referred to in the Pickle amendment. According to the regulation, Pickle amendment beneficiaries must have received SSI at one time "but [have] become ineligible for those payments because of OASDI cost-of-living increases." 42 C.F.R. § 435.135 (1983). To comply with this regulation, DHS chose to restrict the applicability of the amendment to persons who had become ineligible for SSI "solely" because of an OASDI cost-of-living increase. In other words, the event precipitating the loss of SSI eligibility had to be an OASDI cost-of-living increase and only that. If eligibility was originally lost for any other reason, the Pickle amendment could not apply.

Plaintiffs attack this interpretation of the amendment, arguing that a more liberal "but for" test properly identifies the amendment's beneficiaries. Under this test, any former recipient of SSI who could requalify for SSI "but for" OASDI cost-of-living increases occurring since he or she last received SSI would be entitled to have Medicaid benefits restored without regard to the reason he or she had originally become ineligible for SSI. In support of their argument, plaintiffs rely on *Ciampa v. Secretary of Health & Human Services,* 687 F.2d 518 (1st Cir.1982), which adopted the "but for" test advocated by plaintiffs. The district court accepted plaintiffs' view.

The district court's construction of the statute is subject to de novo review. *Turner v. Prod,* 707 F.2d 1109, 1114 (9th Cir.1983), *cert. granted,* —— U.S. ——, 104 S.Ct. 1412, 79 L.Ed.2d 739 (1984). "As in all cases involving statutory construction, 'our starting point must be the language employed by Congress.'" *American Tobacco Co. v. Patterson,* 456 U.S. 63, 68, 102 S.Ct. 1534, 1537, 71 L.Ed.2d 748 (1982) (quoting *Reiter v. Sonotone Corp.,* 442 U.S. 330, 337, 99 S.Ct. 2326, 2330, 60 L.Ed.2d 931 (1979)). In this case, the language used by Congress is "except for." That is, the amendment defines those for whom categorical Medicaid must be provided as persons who are receiving OASDI benefits, who once received SSI, and who would be eligible for SSI again "except for" OASDI cost-of-living increases. Thus the language used by Congress does not require that OASDI cost-of-living increases be the cause of the loss of SSI eligibility. It merely requires that the person be able to requalify for SSI when his or her income is calculated without OASDI cost-of-living increases included. The "but for" test of plaintiffs thus appears to be the test Congress chose to describe the appropriate relationship between SSI eligibility and OASDI cost-of-living increases.

The defendants attempt to avoid the "but for" interpretation by drawing our attention to the title of the amendment.[4] Al-

---

quirement (and each such State plan shall be deemed to require) that medical assistance under such plan shall be provided to any individual, for any month after June 1977 for which such individual is entitled to a monthly insurance benefit under Title II of such Act but is not eligible for benefits under Title XVI of such Act, in like manner and subject to the same terms and conditions as are applicable under such State plan in the case of individuals who are eligible for and receiving benefits under such Title XVI for such month, if for such month such individual would be (or could become) eligible for benefits under such Title XVI except for amounts of income received by such individual and his spouse (if any) which are attributable to increases in the level of monthly insurance benefits payable under Title II of such Act which have occurred pursuant to section 215(i) of such Act,

in the case of such individual, since the last month after April 1977 for which such individual was both eligible for (and received) benefits under such Title XVI and was entitled to a monthly insurance benefit under such Title II, and, in the case of such individual's spouse (if any), since the last such month for which such spouse was both eligible for (and received) benefits under such Title XVI and was entitled to a monthly insurance benefit under such Title II. Solely for purposes of this section, payments of the type described in section 1616(a) of the Social Security Act or of the type described in section 212(a) of Public Law 93–66 shall be deemed to be benefits under Title XVI of the Social Security Act.

4. The title of the Pickle amendment is: "Preservation of Medicaid Eligibility for Individuals Who Cease to be Eligible for Supplemental Security Income Benefits on Account of Cost-of-

though the title of an Act may be a useful aid in resolving ambiguities in a statute, the Pickle amendment is not ambiguous. *See FTC v. Mandel Bros. Inc.,* 359 U.S. 385, 388–89, 79 S.Ct. 818, 821–22, 3 L.Ed.2d 893 (1959); 2A C. Sands, *Sutherland Statutory Construction* § 47.03 (1973). It contains no causation requirement beyond that which requires the recipient to be eligible for SSI "except for" OASDI cost-of-living increases. We agree with the First Circuit that titles should be used " 'to resolve ambiguities and not to create them.' " *Ciampa,* 687 F.2d at 525 (quoting *Massachusetts Financial Services, Inc. v. Securities Investor Protection Corp.,* 545 F.2d 754, 757 n. 7 (1st Cir.1976), *cert. denied,* 431 U.S. 904, 97 S.Ct. 1696, 52 L.Ed.2d 388 (1977)). They should not be used to vary the plain meaning of the statute. *Id.;* 2A C. Sands, *supra,* § 47.03.

The defendants also argue that the legislative history supports their interpretation of the amendment. But where the language of a statute is unambiguous, it is conclusive as to its meaning "[a]bsent a clearly expressed legislative intention to the contrary." *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 2056, 64 L.Ed.2d 766 (1980). We find no clearly expressed intention in the legislative history that would lead us to depart from the language which Congress chose in drafting the

amendment. It is true that there are statements in the legislative history indicating that the amendment would protect those whom an OASDI cost-of-living increase would cause to lose SSI eligibility.[5] We regard those statements as offering examples of those who would be included within the scope of the Pickle amendment. Congress can certainly draft a statute that is broader than the examples which its members use to illustrate the statute's operation. *See, e.g., United States v. Culbert,* 435 U.S. 371, 98 S.Ct. 1112, 55 L.Ed.2d 349 (1978). The comments simply deal with the cases nearest to hand. They imply nothing one way or the other as to Congress' intention with respect to those who lost SSI for reasons other than an OASDI cost-of-living increase but who now meet the literal requirements of the statute.[6]

Nevertheless, HHS argues that a restrictive interpretation is necessary to minimize the inherent inconsistency between the Pickle amendment and the purposes of the Medicaid program. HHS contends that the Pickle amendment creates a situation where the less needy are eligible for categorical Medicaid while the more needy are not. That is, persons having less income than some Pickle amendment beneficiaries are not eligible for categorical Medicaid because, for example, they were not previously recipients of SSI and therefore do not

---

Living Increases in Social Security Benefits." 42 U.S.C. § 1396a (note).

**5.** A sample of the legislative history relied upon by HHS is found in the Senate Finance Committee Report:

> Under present law, there are some cases in which a cost-of-living increase in social security benefits may result in the loss of SSI eligibility. Although the amount of SSI cash benefits in such cases is very small, the denial of medicaid benefits represents a serious loss to the individual affected. The committee bill would provide that no recipient of SSI would lose eligibility for medicaid as the result of the operation of the cost-of-living benefit increase provision under Title II of the Social Security Act.

S.Rep. No. 1265, 94th Cong., 2d Sess. 5, *reprinted in* 1976 U.S.Code Cong. & Ad.News 5997, 6001.

**6.** HHS also relies on a statement of Congressman Corman who described the Pickle amendment as "in effect grandfather[ing] in recipients of medicaid who lost their eligibility solely because of an increase in social security benefits." 122 Cong.Rec. 35133 (Oct. 1, 1976). But as the *Ciampa* court noted, Congressman Corman was merely contrasting the Senate provision which became the Pickle amendment with the House provision which would have dealt with the effect of OASDI cost-of-living increases on Medicaid eligibility by indexing the $20 disregard. The Senate provision would have protected only against the loss of Medicaid of those who are no longer eligible for SSI solely because of increases in income due to cost-of-living increases in their OASDI income whereas the House provision would have protected against the loss of SSI as well as of Medicaid regardless of the source of the income increase. *Ciampa,* 687 F.2d at 524–25.

qualify for the special income exclusion created by the Pickle amendment. The "but -for" test adopted by the *Ciampa* court allegedly aggravates this "inequity" by enlarging the class of less needy persons who are eligible for categorical Medicaid. The government therefore urges us to adopt a restrictive interpretation of the Pickle amendment in order to minimize this inequity.

In the *Trans Alaska Pipeline Rate Cases,* 436 U.S. 631, 98 S.Ct. 2053, 56 L.Ed.2d 591 (1978), the Supreme Court said that there was " 'some scope for adopting a restricted rather than a literal or usual meaning of ... words where acceptance of that meaning would lead to absurd results ... or would thwart the obvious purpose of the statute' ... [b]ut it is otherwise 'where no such consequences would follow and where ... it appears to be consonant with the purposes of the Act.' " *Id.* at 643, 98 S.Ct. at 2061. The Pickle amendment is itself an exception to the general rule that the medical needs of the more needy should be met before those of the less needy. *See Schweiker v. Hogan,* 457 U.S. 569, 572–73, 102 S.Ct. 2597, 2600–01, 73 L.Ed.2d 227 (1982). There is nothing absurd in applying its plain meaning to include an additional class whose circumstances differ little from those of the class covered under HHS's so-called restrictive interpretation.[7] True, there still remains another class of persons not made eligible, who are economically similarly situated. Their exclusion, however, is inherent in the anomoly that is the Pickle amendment.

Moreover, we think the meaning adopted by defendants could itself lead to absurd results probably neither foreseen nor intended by Congress. As we understand the HHS regulation, any event other than an OASDI cost-of-living increase that would have led to the loss of SSI eligibility, even if only temporarily, results in a permanent loss of Pickle eligibility, although Pickle eligibility may have been established before the occurrence of the terminating event.[8] Congress might reasonably have sought to avoid the permanent loss of Medicaid in these circumstances by writing the amendment as it did.

More important, we see nothing in the plain meaning of the amendment that is inconsistent with either the purposes of the Pickle amendment itself or of the Medicaid program. A prime purpose of the Pickle amendment is to insure that OASDI cost-of-living increases intended to benefit the aged and disabled "would not have inadvertent harmful effects." S.Rep. No. 1265, 94th Cong., 2d Sess. 28, *reprinted in* 1976 U.S.Code Cong. & Ad.News 6022. Plaintiffs are persons now deprived of categorical Medicaid benefits because of inflationary increases in their OASDI income which Congress hoped would inure to their benefit, not their detriment. Plaintiffs are therefore within the class Congress intended to benefit when it enacted the Pickle amendment.

Congress described the purpose of the Medicaid program as enabling the states "to furnish ... medical assistance on behalf of families with dependent children and of aged, blind, or disabled individuals,

---

**7.** The two classes are identical except as to the reason which led to their loss of SSI eligibility. HHS made no attempt before this court to distinguish between the two classes on this basis. However, in the *Ciampa* litigation, HHS attempted to distinguish the two classes because of their different reliance interests. Like the *Ciampa* court, we reject any distinction based on reliance interests, because we fail to see any difference in those interests. Neither reason nor intuition supports the notion that those who lose SSI due to a cost-of-living increase in their OASDI benefit have a greater expectation of continued Medicaid coverage than those who lose SSI due to another condition which affects

their eligibility but which now has been removed.

**8.** The Social Security Act lists numerous events other than increases in income or resources that could lead to a temporary loss of SSI eligibility. For example, residence in a public institution throughout a month results in the loss of SSI eligibility for that month. 42 U.S.C. § 1382(e)(1)(A). In addition, a person who goes outside the United States is ineligible for SSI for any month during all of which he is outside the United States. 42 U.S.C. § 1382(f).

whose income and resources are insufficient to meet the costs of necessary medical services." 42 U.S.C. § 1396. A plain meaning interpretation of the Pickle amendment does not thwart this purpose. It does not deprive anyone of Medicaid benefits who otherwise would be entitled to them. Indeed, it extends Medicaid benefits to those who would otherwise not have them. Defendants do not contend that these persons have adequate income or resources to provide their own medical care.

 Finally, defendants urge us to defer to the interpretation given the amendment by those charged, by Congress with its administration. If, however, a statute's language is clear and the congressional purpose ascertainable, it is unnecessary to look to the administrative interpretation. *Chevron, Inc. v. Natural Resources Defense Council, Inc.,* — U.S. —, 104 S.Ct. 2778, 2781–82, 81 L.Ed.2d 694 (1984); *Donovan v. Southern California Gas Co.,* 715 F.2d 1405, 1408 (9th Cir.1983). Where the administrative interpretation is contrary to the language chosen by Congress, and that language is not inconsistent with the congressional purpose, we must defer to Congress whose responsibility it is to make the laws rather than to the agency whose responsibility is merely to administer them. *See FEC v. Democratic Senatorial Campaign Committee,* 454 U.S. 27, 32, 102 S.Ct. 38, 42, 70 L.Ed.2d 23 (1981). We therefore adhere to the meaning of the amendment which the words chosen by Congress dictate, and adopt the "but for" construction of the First Circuit. In so doing, we also avoid unnecessarily creating a conflict between the circuits.

## II

 The "deeming" issue comes before us from a denial of a motion for preliminary injunction. Therefore, our standard of review of the district court's order is a limited one. *Sports Form, Inc. v. United Press International, Inc.,* 686 F.2d 750, 752 (9th Cir.1982). An order denying a motion for preliminary injunction is reversible only if the district court abused its discretion or relied on an erroneous legal principle. *Los Angeles Memorial Coliseum Commission v. National Football League,* 634 F.2d 1197, 1200 (9th Cir.1980). A court's order relies on an erroneous legal principle if it employs the wrong standard governing the grant or denial of a preliminary injunction or if it misapprehends the law with respect to the underlying issues in litigation. *Sports Form,* 686 F.2d at 752.

 The district court determined that plaintiffs failed to demonstrate any chance of success on the merits; it therefore applied the correct standard. *Id.* at 753.[9] The court's conclusion relied upon its interpretation of the Pickle amendment and upon the legislative history. To determine whether or not the court misapprehended the underlying law, one must be familiar with the operation not only of the Medicaid program but of the AFDC program as well.

 The "deeming" issue concerns the Medicaid eligibility of the family members of a Pickle amendment beneficiary. The family's eligibility for Medicaid is determined according to the standards and methodologies employed by the state in determining eligibility for AFDC benefits. *See* 42 U.S.C. § 1396a(a)(10)(C)(i)(III); *see also* 42 U.S.C. § 1396a(a)(17)(B). In determining eligibility for AFDC, federal law requires states to take into account the income and resources of a spouse in determining the eligibility of the other spouse and to take into account the income and resources of a parent in determining the eligibility of his or her child. 42 U.S.C. § 602(a)(7)(A); 45 C.F.R. § 233.20(a)(3)(vi).

---

**9.** The standard for granting a preliminary injunction requires the moving party to demonstrate either a combination of probable success on the merits and the possibility of irreparable injury or that serious questions are raised and the balance of hardships tips sharply in that party's favor. *Id.* Where there is no chance of success at all, the moving party cannot meet either test. *Id.; Benda v. Grand Lodge of International Association of Machinists & Aerospace Workers,* 584 F.2d 308, 315 (9th Cir.1978), *cert. dismissed,* 441 U.S. 937, 99 S.Ct. 2065, 60 L.Ed.2d 667 (1979).

That is, the income of the applicant's family member is "deemed" to be part of the income of the applicant for purposes of determining eligibility.

An exception to this general rule exists where the spouse or parent is a recipient of SSI benefits. In such a case, federal law expressly prohibits a state from deeming the income or resources of an SSI recipient to be part of the income of the family for purposes of determining the AFDC eligibility of the family. 42 U.S.C. § 602(a)(24). By virtue of the comparability rule of 42 U.S.C. § 1396a(a)(10)(C)(i)(III) imposing a uniform methodology for the calculation of SSI eligibility, states are similarly prohibited from deeming the income and resources of an SSI recipient to be those of the family in determining his family's eligibility for Medicaid. *Cf. Caldwell v. Blum,* 621 F.2d 491, 495 (2d Cir.1980) (comparability rule held to prohibit states from imposing a transfer of assets prohibition in determining Medicaid eligibility which prohibition is not applicable in determining eligibility for SSI), *cert. denied,* 452 U.S. 909, 101 S.Ct. 3039, 69 L.Ed.2d 412 (1981).

Plaintiffs argue that the Pickle amendment expressly incorporates 42 U.S.C. § 602(a)(24)'s prohibition and therefore precludes the state from deeming the income and resources of Pickle amendment beneficiaries to be part of the income of other members of the family for purposes of determining their eligibility for Medicaid.[10] In support of their argument, plaintiffs rely on the phrase "in like manner and

subject to the same terms and conditions as are applicable under such state plan in the case of individuals who are eligible for and receiving [SSI] benefits." As plaintiffs interpret this phrase, the Pickle amendment modifies every state Medicaid plan so that every reference in such plans to SSI recipients incorporates an implicit reference to Pickle amendment beneficiaries as well. Thus, because every state Medicaid plan must provide for the exclusion of an SSI recipient's income and resources in determining the Medicaid eligibility of the recipient's family, those plans, according to plaintiffs, must also provide for the exclusion of a Pickle amendment beneficiary's income and resources in determining the Medicaid eligibility of the beneficiary's family.

We again begin our analysis with the language of the amendment itself. The above quoted phrase placed in the context in which Congress used it is as follows: "there is hereby imposed the requirement that medical assistance under such plan shall be provided to any individual [who meets the other requirements of the amendment], in like manner and subject to the same terms and conditions as are applicable under such State plan in the case of individuals who are eligible for and receiving [SSI] benefits." The amendment does not say that Pickle amendment beneficiaries are to be *treated* in like manner as SSI recipients. Instead, it says that medical assistance *"shall be provided"* them *"in a*

---

**10.** When this lawsuit began, California considered all the income of the Pickle amendment beneficiary in determining the share of cost required of the other family members. *See* 22 Cal.Admin.Code § 50564(c). The share of cost is the product of two variables: the maintenance needs standard for a family of like size and the family's income. The share of cost is arrived at by subtracting the applicable maintenance needs standard from the family's income. The effect, therefore, of counting the Pickle individual's income in determining the income of the family is to increase the family's share of cost.

After appeal was taken from the district court's denial of preliminary injunctive relief in this case, California changed its policy. Instead of deeming the Pickle family's income to in-

clude all the Pickle individual's income, California now includes only that part of the Pickle beneficiary's income that exceeds the SSI minimum. The effect of the new policy is to create absolute equality between families with an SSI head and families with a Pickle head. Our decision concerns only the propriety of the policy which was in effect at the time the district court ruled on the motion for preliminary injunction. We intimate no opinion on the propriety of California's new policy. Moreover, we note that California's change in policy does not moot the present appeal, because California is free to revert to its former policy and indeed may be required to do so by HHS. *See United States v. W.T. Grant Co.,* 345 U.S. 629, 632, 73 S.Ct. 894, 897, 97 L.Ed. 1303 (1953).

like manner and subject to the same terms and conditions" as are applicable to SSI recipients. Viewed in context, the subject phrase refers only to the *kind* of medical assistance—i.e., categorical Medicaid—to be provided the Pickle *individual.* It equates Pickle beneficiaries with SSI recipients only insofar as the beneficiary's own benefits are concerned. It does not, at least explicitly, require that the Pickle beneficiary be equated with SSI recipients when it comes to determining the medical benefits to be provided non-Pickle beneficiaries. Although the Pickle amendment requires that the terms and conditions of its beneficiary's medical assistance are to be identical to those of an SSI recipient's, that requirement is fully met even if that beneficiary's income is deemed to be income of the beneficiary's family members. The prohibition against "deeming" incorporated in 42 U.S.C. § 602(a)(24) is a term and condition affecting eligibility of the Pickle beneficiary's family for medical assistance and not the Pickle beneficiary's own eligibility.

Moreover, the title and legislative history of the amendment reinforces the meaning suggested by the literal language of the text. The title indicates that the purpose of the amendment is to preserve the "Medicaid Eligibility for Individuals Who Cease to be Eligible for Supplemental Security Income Benefits." A Pickle beneficiary's family is not an individual who has ceased to be eligible for SSI. The legislative history also stresses Congress' intention to protect only the SSI recipient. The Senate Report, for example, describes the amendment as providing "that no recipient of SSI would lose eligibility for medicaid as the result of the operation of the cost-of-living benefit increase provision." S.Rep. No. 1265, *supra* at 5, *reprinted in* 1976 U.S. Code Cong. & Ad.News 6001. There is nothing in the amendment's history that suggests that Congress also intended to protect the Medicaid eligibility of those related to SSI recipients.

The statute itself provides a further reason for rejecting the plaintiffs' interpretation. Since Congress enacted the Pickle amendment, it has amended the comparability provision of Title XIX. *See* Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97–248, 96 Stat. 376 (1982) (amending 42 U.S.C. § 1396a(a)(10)(C)(i)). The amended provision requires that the standards and methodologies used to determine a person's Medicaid eligibility must be identical to those applicable in determining such person's eligibility for the cash assistance program to which that person is most closely categorically related. 42 U.S.C. § 1396a(a)(10)(C)(i)(III). If we were to adopt plaintiffs' interpretation, the methodology applicable for determining the Medicaid eligibility of a Pickle beneficiary's family would differ from that applicable in determining its eligibility for AFDC, the program to which the Pickle beneficiary's family is most closely categorically related. Under such a construction, there would be an income and resources disregard applicable in determining the family's eligibility for Medicaid which would not be applicable in determining the family's eligibility for AFDC.

Unlike the statutory language relating to the "but for" issue, the language here supports a restrictive view. Although the plaintiffs point out that such an interpretation would leave Pickle families slightly worse off than their SSI counterparts, they are no worse off, and in fact are slightly better off, than other families of similar resources whose heads are neither SSI recipients nor Pickle beneficiaries. Inequities abound at the fringes of the Pickle amendment. Restricting its application to the individual to whom Congress explicitly referred is as good a way as any to limit this anomaly. At least at this stage of the litigation, we cannot conclude that the district court misapprehended the underlying law in drawing the line at this point. Nor did it otherwise abuse its discretion in refusing plaintiffs' request for a preliminary injunction.

AFFIRMED.