804 F.2d 541
 1987 A.M.C. 305
 MOBIL SALES AND SUPPLY CORPORATION and Mobil Oil
Corporation, Plaintiffs- Appellants,
v.
The Vessel PANAMAX VENUS, and her engines, tackle, apparel,
equipment and appurtenances, in rem; Alexandra Navigation
Corp., Ltd.; Eddie's Steamship Company, Ltd.; and Eddies
Shipping Agency, Inc., in personam, Defendants- Appellees.
The CHASE MANHATTAN BANK (NATIONAL ASSOCIATION) as
Mortgagee, Plaintiff-in- Intervention-Appellee,
v.
PANAMAX VENUS, her engines, tackle, furniture, apparel,
appurtenances, etc., in rem; and Alexandra
Navigation Corporation, Ltd., in
personam, Defendants- Appellees.
 No. 85-6499.
 United States Court of Appeals,
Ninth Circuit.
 Argued and Submitted Oct. 1, 1986.
Decided Nov. 12, 1986.
 
 Alfred E. Yudes, Jr., Burlingham Underwood & Lord, New York City, Erich Wise, Graham & James, Long Beach, Cal., for plaintiffs-appellants.
 Alan Nakazawa, Lillick, McHose & Charles, Los Angeles, Cal., for defendants-appellees.
 Appeal from the United States District Court for the Central District of California.
 Before GOODWIN, WALLACE and ANDERSON, Circuit Judges.
 WALLACE, Circuit Judge:
 
 
 1
 Mobil Oil Corporation (Mobil Oil) and Mobil Sales and Supply Corporation (Mobil Sales) appeal from a judgment and order for disbursement of funds entered by the district court. They challenge subordination of their maritime liens to the preferred ship mortgage of Chase Manhattan Bank (Chase). We have jurisdiction pursuant to 28 U.S.C. Sec. 1291, and we affirm.
 
 
 2
 * The M/V Panamax Venus was a Liberian flag vessel owned by Alexandra Navigation Corporation, Ltd. In March 1984, the vessel's shipping agent contracted to have Mobil Oil deliver lubrication oil to the Panamax Venus. Mobil Oil delivered the oil to the ship at Kaohsiung, Republic of China, but never received payment. In July 1984, the shipping agent contracted to have Mobil Sales deliver bunker fuel oil to the Panamax Venus, then in Yokohama, Japan. Mobil Sales delivered the oil to the ship in Yokohama, but never received payment.
 
 
 3
 In October 1984, the Mobil companies began an in rem action against the Panamax Venus in the Central District of California, asserting maritime liens for the price of the oil delivered pursuant to the two contracts. The ship was arrested in Los Angeles harbor and held pending resolution of the action. In November 1984, Chase intervened as a plaintiff in the case, alleging that it held a $69 million foreign preferred ship mortgage on the Panamax Venus that it acquired in 1981 and that was duly registered under Liberian law. The Mobil companies do not contest the validity of Chase's mortgage.
 
 
 4
 Because neither the owner nor the agent of the Panamax Venus came forward to pay the claims or deny liability, the court entered an order of default against them, and ordered the ship sold and its proceeds paid into the court registry pending final judgment on the three parties' claims. The sale netted 3.3 million dollars. The court found that the Mobil companies held valid maritime liens against the ship. It ruled, however, that these liens were subordinate to the mortgage held by Chase, and, since the fund was not larger than Chase's mortgage, entered a final judgment awarding Chase the entire proceeds of the sale.
 
 II
 
 5
 In general, a preferred ship mortgage enjoys priority over all other claims against a vessel except certain maritime liens not relevant in this case and fees and costs imposed by the court. 46 U.S.C. Sec. 953. A preferred mortgage on a foreign vessel, however, is also subordinate to "maritime liens for repairs, supplies, towage, use of drydock or marine railway, or other necessaries performed or supplied in the United States." 46 U.S.C. Sec. 951 (emphasis added). The Mobil companies argue that, under this statute, their liens should enjoy priority over Chase's foreign preferred ship mortgage because they are American suppliers and, alternatively, because their liens arose from contracts substantially performed in the United States. We review such questions of statutory interpretation de novo. Trinity County Public Utilities District v. Harrington, 781 F.2d 163, 165 (9th Cir.1986).
 
 
 6
 The Mobil companies first contend that their maritime liens should enjoy priority over Chase's foreign preferred ship mortgage because they are American suppliers. The text of section 951, however, affords priority to liens arising out of necessaries "supplied in the United States," not to liens arising out of necessaries provided by American suppliers, wherever supplied. The Mobil companies argue that the legislative history of section 951 nevertheless shows that Congress actually intended to give priority to any lien of an American supplier.
 
 
 7
 We see no need to examine the statute's legislative history. "When confronted with a statute which is plain and unambiguous on its face, we ordinarily do not look to legislative history as a guide to its meaning." Tennessee Valley Authority v. Hill, 437 U.S. 153, 184 n. 29, 98 S.Ct. 2279, 2296 n. 29, 57 L.Ed.2d 117 (1978). "The best indicator of what statutory words mean is what they say." Finnegan v. Matthews, 641 F.2d 1340, 1344 (9th Cir.1981) (footnote omitted). "Where, as here, there is no ambiguity in the statutory language, resort to the legislative history is usually unnecessary." Rivera v. Becerra, 714 F.2d 887, 893 (9th Cir.1983), cert. denied, 465 U.S. 1099, 104 S.Ct. 1591, 80 L.Ed.2d 124 (1984). We conclude that an examination of legislative history is unnecessary in this case. The statute plainly and unambiguously affords priority only to those liens arising out of work performed or necessaries supplied in the United States.
 
 
 8
 The Mobil companies next contend that because the contracts for the delivery of supplies under which the maritime liens arose were negotiated in the United States between United States corporations and the vessel's shipping agent, an entity doing business in the United States, were governed by United States law, and called for payments to be made in the United States, these contracts were substantially performed in the United States and therefore meet the requirement of section 951. The district judge, however, found that the contracts were performed in Kaohsiung, Republic of China and Yokohama, Japan respectively. More fundamentally, section 951 makes no reference to contracts or the situs of their "substantial performance." The plain language of the section relates only to repairs performed or necessaries supplied in the United States. Morgan Guaranty Trust Co. v. M/V Grigorios C. IV, 615 F.Supp. 1444, 1454 (E.D.La.1985).
 
 
 9
 The Mobil companies did not supply the oil in the United States. Therefore, we hold that Chase's foreign preferred ship mortgage enjoys priority over the maritime liens of the Mobil companies.
 
 
 10
 AFFIRMED.