Raymon and Joann LYNCH, et al.,
Plaintiffs-Appellees,

v.

William DAWSON, et al.,
Defendants-Third Party
Plaintiffs-Appellees

and

Otis Bowen, M.D.,[*] Third Party
Defendant-Appellant.

No. 85–2928.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Sept. 29, 1986.

Decided June 23, 1987.

Chris G. Stoll and Cade Morrow, San Francisco, Cal., for third-party defendant-appellant.

Evelyn R. Frank, Oakland, Cal., for plaintiffs-appellees.

* Otis Bowen, M.D. is substituted for his predecessor Margaret M. Heckler, Secretary of Health and Human Services. Fed.R.App.P. 43 (c)(1).

Before WALLACE, FLETCHER and CANBY, Circuit Judges.

CANBY, Circuit Judge.

In this second appeal,[1] the Secretary of the United States Department of Health and Human Services (Secretary) seeks to overturn another of the district court's interpretations of the Pickle amendment to Title XIX of the Social Security Act,[2] Pub.L. 94–566, § 503 (codified at 42 U.S.C. § 1396a (note) (1982)). The district court granted plaintiffs' motion for summary judgment and enjoined the Secretary from denying categorical medicaid benefits to Pickle-eligible individuals[3] by deeming Title II cost of living increases (COLA's) received by financially-responsible family members to the income of the Pickle-eligible individual.[4] The Secretary contends that: (1) the plaintiffs have no standing to invoke the jurisdiction of the federal district court and (2) the plain meaning of the statute instructs the Secretary to disregard *only* the COLA's of the Pickle-eligible individual and COLA's of a spouse who has previously received both Title II and Title XVI benefits but has since lost Title XVI eligibility.

## PROCEDURAL BACKGROUND

The plaintiffs filed a state court action in April 1983 against the California Department of Health Services, alleging that the state was denying medicaid benefits to which plaintiffs and their class were entitled under the Pickle amendment. The state defendants removed the action to federal court and filed a third party complaint against the Secretary. The plaintiffs named the Secretary as a defendant and sought certification of a nationwide class which was granted on March 9, 1984. *Lynch v. Rank*, 604 F.Supp. 30 (N.D.Cal. 1984). Plaintiffs contended that if an applicant would be eligible for Title XVI Supplemental Security Income (SSI) benefits "but for" Title II COLA's received since the applicant's last SSI check, then she or he is Pickle-eligible for medicaid benefits.

Plaintiffs obtained a partial summary judgment and permanent injunction requiring that the Secretary instruct the states to

---

1. Disposition of the first appeal, under the title *Lynch v. Rank*, is reported at 747 F.2d 528 (9th Cir.1984), and is amended at 763 F.2d 1098 (9th Cir.1985).

2. The full text of the Pickle amendment is as follows:

   In addition to other requirements imposed by law as a condition for the approval of any State plan under Title XIX of the Social Security Act, there is hereby imposed the requirement (and each such State plan shall be deemed to require) that medical assistance under such plan shall be provided to any individual, for any month after June 1977 for which such individual is entitled to a monthly insurance benefit under Title II of such Act but is not eligible for benefits under Title XVI of such Act, in like manner and subject to the same terms and conditions as are applicable under such State plan in the case of individuals who are eligible for and receiving benefits under such Title XVI for such month, if for such month such individual would be (or could become) eligible for benefits under such Title XVI except for amounts of income received by such individual and his spouse (if any) which are attributable to increases in the level of monthly insurance benefits payable under Title II of such Act which have occurred pursuant to section 215(i) of such Act, in the case of such individual, since the last month after April 1977 for which such individual was both eligible for (and received) benefits under such Title XVI and was entitled to a monthly insurance benefit under such Title II, and, in the case of such individual's spouse (if any), since the last such month for which such spouse was both eligible for (and received) benefits under such Title XVI and was entitled to a monthly insurance benefit under such Title II. Solely for purposes of this section, payments of the type described in section 1616(a) of the Social Security Act or of the type described in section 212(a) of Pub.L. 93–66 shall be deemed to be benefits under Title XVI of the Social Security Act.

3. A Pickle-eligible individual is an individual who is (1) entitled to receive Title II benefits; (2) once received Title XVI benefits; and (3) would continue to be eligible for Title XVI benefits but for increases in income attributable to automatic Title II cost of living adjustments.

4. "Deeming" income is a method by which one individual's income is considered to be a second person's income. 20 C.F.R. § 416.1160 (1986).

use the "but for" test to determine medicaid eligibility under the Pickle amendment. The district court denied plaintiffs' request that it prohibit California from "deeming" any income from a Pickle-eligible medicaid recipient to his or her medically needy spouse and children. Both sides appealed and this panel affirmed the district court's order on both issues.

In April 1985 the Secretary informed plaintiffs' attorney that it intended to establish a policy that would forbid deduction of Title II increases received by financially responsible spouses except in the most limited circumstances. In May 1985 the Secretary published the new procedures. Health Care Financing Administration (HCFA), Program Memorandum No. 85-4 (May 1985). Plaintiffs' motion for a temporary restraining order preventing implementation of the new procedures was denied on June 3, 1985. On August 20, 1985, the district court granted plaintiffs' motion for summary judgment, holding that the Pickle amendment requires the exclusion of all Title II COLA's received by any family member whose income is deemed to the Pickle applicant and is received subsequent to the applicant's loss of Title XVI benefits. *Lynch v. Rank,* 639 F.Supp. 66 (N.D.Cal. 1985). On November 12, 1985, the district court entered a permanent injunction implementing its ruling. *Lynch v. Rank,* 639 F.Supp. 69 (N.D.Cal.1985). The Secretary appealed from the injunction and moved for a stay pending the appeal. This court denied the stay on January 23, 1986. On April 10, 1986, the Secretary modified his Pickle amendment regulations to comply with the district court's order so long as it remains in effect. 51 Fed.Reg. 12,325–12,- 330 (1986), *amending* 42 C.F.R. § 435.- 135(b).

## STANDING

■ The Secretary contends that plaintiffs have failed to document any evidence of actual injury to either the named plaintiffs or any member of their class as a result of the Secretary's interpretation of the Pickle amendment. The Secretary further contends that those individuals potentially covered by the district court's interpretation of the statute are not members of the nationwide class certified by the district court on March 9, 1984.

Article III requires, at a minimum, that a plaintiff show he has " 'personally ... suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.' " *LaDuke v. Nelson,* 762 F.2d 1318, 1323 (9th Cir.1985) (quoting *Valley Forge Christian College v. American United for Separation of Church and State, Inc.,* 454 U.S. 464, 472, 102 S.Ct. 752, 758, 70 L.Ed.2d 700 (1982)), *amended on other grounds,* 796 F.2d 309 (9th Cir.1986). Ramon and Joann Lynch are the named representatives of the class certified under Federal Rule of Civil Procedure 23(b)(2). Both parties agree that Lynch will suffer no immediate injury by virtue of the Secretary's treatment of Ms. Lynch's Title II COLA's, because of California's unusually high SSI/SSP grant.[5]

The lack of injury to Lynch is not fatal. "[T]he fact of certification will preserve a class's standing even after the named individual representatives have lost the required 'personal stake.' " *LaDuke v. Nelson,* 762 F.2d 1318, 1325 (9th Cir.1985). For standing purposes, "this court's inquiry must focus on the standing of the *class* to seek equitable relief." *Id.* As long as some members of the class of plaintiffs will lose medicaid eligibility as a result of the Secretary's action, standing will be preserved.

At oral argument the Secretary's counsel admitted that there are 30 to 40 members of the class known to the Secretary who have a personal stake in the outcome of this appeal. "While '[c]onsent of parties cannot give the courts of the United States jurisdiction, ... the parties may admit the existence of facts which show jurisdiction, and the courts may act judicially upon such

---

**5.** The amount of the SSI grant is set by federal law. States are, however, free to supplement the federal amount with state resources. 42 U.S.C. § 1382e (1982). California has chosen to do so. Cal. Welfare & Inst. Code § 12000 *et seq* (West 1974). The combined federal-state payment is referred to as SSI/SSP (State Supplemental Payment).

an admission.'" *Verzosa v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 589 F.2d 974, 977 (9th Cir.1978) (quoting *Railway Co. v. Ramsey*, 89 U.S. [22 Wall] 322, 327, 22 L.Ed. 823 (1874)). This class continues to have standing to litigate its claims.

## MERITS

█ In the present appeal, we must determine the proper formula for calculating countable income for Pickle-eligible medicaid applicants. We begin with the language and structure of the statute itself. The Pickle amendment specifies that its requirements are in addition to all existing requirements for medicaid plans.[6] Those affected by the amendment are persons who are disabled, blind, or over 65 and whose income and resources are such that they would be eligible for SSI if the COLA's paid under Title II were deducted from their income. The initial operative language, which may fairly be extracted from the nearly impenetrable verbiage of the amendment, is quite expansive.

> [U]nder Title XIX ... medical assistance ... shall be provided to any individual ... if for such month such individual would be (or could become) eligible for benefits under such Title XVI except for amounts of income received by such individual and his spouse (if any) which are attributable to increases in the level of monthly insurance benefits payable under Title II of such Act....

Thus all persons whose incomes are above the SSI limit, and who would be below that limit but for COLA's in their countable income, constitute the class of persons to whom the amendment is addressed. If analysis is confined to this language of the amendment, plaintiffs clearly prevail.

The key determination is whether the individual would be eligible for SSI once the income "received" by the individual and spouse "attributable to" COLA's is disregarded. To be eligible for SSI benefits an individual must not have more than the permissible income. 20 C.F.R. § 416.202 (1986). Subpart K of the SSI regulations describes how the Secretary "count[s] income" for purposes of SSI eligibility. *Id.* at § 416.1100. "Income is anything you *receive* in cash or in kind that you can use to meet your needs." *Id.* at § 416.1102 (emphasis added). In addition to earned income, unearned income, and in-kind support and maintenance, income of a spouse or parent may be considered to be the applicant's income through a process referred to as "deeming of income." *Id.* at § 416.1160–.1167. Although the Secretary has defined income as anything *received*, the income of a spouse or parent is deemed to an applicant and is therefore considered received whether or not that income is actually made available to the applicant. *See Schweiker v. Gray Panthers*, 453 U.S. 34, 48, 101 S.Ct. 2633, 2642, 69 L.Ed.2d 460 (1981). Under the literal reading of the first clauses of the Pickle amendment any "countable" income of the applicant which is attributable to COLA's shall be disregarded, regardless of the source of that income: whether paid directly to the individual, paid to an eligible spouse,[7] or deemed to the individual from an ineligible spouse or parent.

The next step in the calculation is to determine the point in time when one begins to disregard the COLA's. The farther back in time COLA's are disregarded, the larger the number of applicants that will be eligible for medicaid benefits. The literal language of the statute provides for two separate starting points after which COLA's are to be disregarded: for the individual, "the last month after April 1977 for which [the applicant] was both eligible for (and received)" both SSI and Title II

---

6. "In addition to other requirements imposed by law as a condition for the approval of any State plan under Title XIX of the Social Security Act, there is hereby imposed the requirement that...."

7. When a couple includes two individuals who are over 65, blind, or disabled, eligibility is determined for the two as a couple rather than as two eligible individuals. The spouse's COLA's are not deemed to the individual, but are included in the unearned income of the couple. In 1986 the income limits for a federal payment were $336 per month for an individual and $504 for a couple. *See* 20 C.F.R. § 416.410 and .412 (1986).

benefits, and for the spouse, "the last such month for which [the] spouse was both eligible for (and received)" both SSI and Title II benefits. It is the latter clause and its potential conflict with the earlier language suggesting disregard of all COLA's which provides the ambiguity that lies at the heart of this phase of the lawsuit.

Because the statute does not specify when to begin disregarding parental COLA's, while it does explicitly address spouses' COLA's, the Secretary contends that the plain meaning of the statute does not permit the disregard of parents' COLA's. Also, because the statute specifies that COLA's of a spouse are to be disregarded since the most recent time when the spouse was entitled to and received both SSI and Title II benefits, the Secretary contends that the COLA's of only that limited category of spouses may be disregarded. This interpretation would disregard COLA's only of spouses who are over 65 or who are (or were at one time) blind or disabled, and who previously received SSI and Title II benefits. It is the Secretary's position that COLA's of a spouse who was never eligible for SSI (generally because the spouse was not blind, disabled, or over 65) would not be disregarded, even if that spouse's COLA's were deemed to the applicant.

This interpretation would exclude many Pickle applicants from medicaid coverage, simply because of increases in Social Security benefits of their family members. For purposes of determining SSI eligibility, an individual's countable income would include all COLA's including that of a spouse or parent, whether or not that income was made available to the applicant. For purposes of the Pickle amendment, intended to save medicaid for those disqualified by COLA's from receiving SSI, COLA's of all

parents and most spouses would not be disregarded, although COLA's paid directly to the applicant would be disregarded.

The Secretary's interpretation of the statute suffers from more than a mere lack of symmetry,[8] however; it is in direct conflict with the very nature and common sense meaning of the Pickle amendment, as reflected in both its title and its history. This court has previously pointed out that the purpose of the amendment as indicated by the title is "to preserve the 'Medicaid Eligibility for Individuals Who Cease to be Eligible for Supplemental Security Income Benefits.'" *Lynch,* 747 F.2d at 536. "The Senate report describes the amendment as providing 'that no recipient of SSI would lose eligibility to medicaid as the result of the operation of the cost-of-living benefit increase provision.'" *Id.* (quoting S.Rep. No. 1265, 94th Cong., 2d Sess. 5, *reprinted in* 1976 U.S.Code Cong. & Admin.News 6001). An interpretation of the amendment that disregards COLA's of financially responsible family members deemed to the Pickle-eligible individual since the individual lost SSI gives effect to the language of the preliminary clauses of the amendment. It effectuates the "prime purpose of the Pickle amendment ... to insure that OAS-DI cost-of-living increases intended to benefit the aged and disabled 'would not have inadvertent harmful effects.'" *Lynch,* 747 F.2d at 533 (quoting S.Rep. No. 1265, 94th Cong., 2d Sess. 28, *reprinted in* 1976 U.S. Code Cong. & Admin.News 6022). This interpretation does not *sub silentio* create an additional amendment as the Secretary suggests. And it is consistent with *Lynch I,* where we accepted the view that the proper medicaid beneficiaries under the amendment were "any former recipient of SSI who could requalify for SSI, 'but for' OASDI cost-of-living increases occurring

---

**8.** The Secretary's understanding would have the additional effect of permitting a Pickle applicant to receive medicaid if the applicant's spouse had been blind or disabled and had recovered from the disability prior to the applicant's loss of SSI eligibility. In such a circumstance, the literal language of the statute would mandate the exclusion of *all* COLA's of the spouse from the time at which the *"spouse* was both eligible for (and received) benefits" under

SSI and Title II. As a hypothetical example, an individual who lost SSI in January of 1986 could only deduct COLA's since January 1986, but the COLA's of the once disabled spouse will be deducted from the last month of disability when the spouse received both SSI and Title II benefits. The result would be that several years of COLA's would be disregarded even though those COLA's were not the cause of the couple's loss of SSI eligibility.

since he or she last received SSI." *Id.* at 531.

It is true that the specificity of the second clause relating to spouses lends some support to the Secretary's argument. We have some latitude, however, to reject a "literal or usual meaning of ... words where acceptance of that meaning would lead to absurd results ... or would thwart the obvious purpose of the statute...." *Lynch I,* 747 F.2d at 533 (quoting *In re Trans Alaska Pipeline Rate Cases,* 436 U.S. 631, 643, 98 S.Ct. 2053, 2061, 56 L.Ed.2d 591 (1978)). In *Lynch I,* no absurdities resulted from applying the plain meaning of the statute. Here, however, application of the plain meaning would lead to absurd results. We should, therefore, go beyond the literal language of the statute because adherence to that language would defeat the plain purpose of the statute. *See Bob Jones University v. United States,* 461 U.S. 574, 586, 103 S.Ct. 2017, 2025, 76 L.Ed.2d 157 (1983).

The Secretary contends that the district court's ruling supporting the plaintiffs' position gives preferential treatment to a couple with an ineligible spouse over a couple with an eligible spouse.[9] The contentions raised by the Secretary appear to be flawed. Eligibility requires that an individual be aged, disabled, or blind *and* have no more resources and income than are permitted. 20 C.F.R. § 416.202 (1986). Where both an individual and a spouse are aged, blind or disabled, income eligibility for SSI benefits is determined for the couple. *See*

20 C.F.R. § 416.412 (1986). Therefore, excess income will cause the couple to lose eligibility. In such a circumstance, neither individual can retain eligibility, although both are still aged, blind, or disabled. An eligible spouse cannot lose her eligibility "a couple of years after the applicant lost SSI," if the applicant's loss was due to excess income. The couple loses eligibility simultaneously due to income in excess of the payment standard. In the Secretary's hypothetical, both medicaid applicants have ineligible spouses, would be able to deduct $60 of COLA's, and would be Pickle eligible.[10]

Finally, the Secretary contends that the district court erred in not deferring to the Department's reasonable interpretation of the statute. While great deference is shown to the Secretary's interpretations of the Social Security Act, they are not inevitably controlling. *Livermore v. Heckler,* 743 F.2d 1396, 1404–05 (9th Cir.1984).

Congress granted broad powers to the Secretary to determine income and resource standards for medicaid eligibility. 42 U.S.C. § 1396a(a)(17) (1986); *Herweg v. Ray,* 455 U.S. 265, 274, 102 S.Ct. 1059, 1066, 71 L.Ed.2d 137 (1982); *Vance v. Hegstrom,* 793 F.2d 1018 (9th Cir.1986). Administrative rules enacted pursuant to such authority are substantive and are reviewed to determine whether the Secretary has exceeded his statutory authority or whether the regulation is arbitrary and capricious. *Id.* at 1022–23.

9. At oral argument counsel for the Secretary presented the following hypothetical. Assume that there are two medicaid applicants and their spouses. Both couples have the same income. Both spouses have the same income. Both spouses have received $60 of COLA's since the applicant lost SSI eligibility. In the case of the couple with the eligible spouse, the eligible spouse loses her eligibility a couple of years after the applicant lost SSI. Her loss of eligibility was the result of recovery from the disability. As a result the spouse has only accumulated $30 of COLA's, because the literal language of the Pickle amendment states that COLA's will be disregarded "since the last such month for which such spouse was both eligible for (and received)" SSI benefits.

Assume that both couples have $50 in excess of payment standard prior to the deduction of

the spousal COLA's. The Secretary contends that the inequitable result under the district court holding would be as follows: The applicant with the ineligible spouse will be Pickle eligible because all $60 would be disregarded and the applicant would be $10 below the limit. The applicant with the eligible spouse would not be Pickle eligible because only $30 would be disregarded and the applicant would be $20 above the limit.

10. Even if the interpretation we adopt were to result in some disparity of treatment favoring spouses who had never received SSI, we would not be inclined for that reason alone to abandon our view, grounded as it is in Congress' major purpose in passing the amendment.

Congress did not delegate such broad powers to the Secretary in the Pickle amendment. The Secretary's directives enacted pursuant to the Pickle amendment are interpretive rules. They clarify and explain existing law and are issued "without delegated legislative power and 'go more to what the administrative officer thinks the statute or regulation means.'" *Cubanski v. Heckler,* 781 F.2d 1421, 1426 (9th Cir.1986) (*quoting Alcaraz v. Block,* 746 F.2d 593, 613 (9th Cir.1984) *quoting Gibson Wine Co. v. Snyder,* 194 F.2d 329, 331 (D.C.Cir.1952)), *cert granted sub nom Bowen v. Kizer,* —— U.S. ——, 107 S.Ct. 1282, 94 L.Ed.2d 141 (1987). An interpretive rule is accorded various degrees of deference, "based on such factors as the timing and consistency of the agency's position, and the nature of its expertise." *Batterton v. Francis,* 432 U.S. 416, 425 n. 9, 97 S.Ct. 2399, 2405 n. 9, 53 L.Ed.2d 448 (1977).

The plaintiffs contend that deference is inappropriate in this case, because the Secretary's interpretation is neither longstanding nor consistent. We agree. In 1979 the HCFA addressed the following inquiry:

> When deemed income from the ineligible parent(s) or ineligible spouse includes the Social Security cost-of-living increase(s), are those increases to be disregarded in determining the Medicaid eligibility of the eligible individual or eligible child [under the Pickle amendment]?

In response, HCFA instructed the states to deduct Title II COLA's received by a financially responsible spouse.

> The amount of OASDI cost-of-living increase received by the ineligible spouse of an SSI/SSP recipient and deemed available to the eligible spouse ... will not be considered in determining Medicaid eligibility for the eligible spouse.

HHS, HCFA Regional Office Manual [ROM] § 1957, Question (b), CCH Medicare & Medicaid Guide ¶ 30126, at 9860 (HHS Exc. 33–34, Addendum at 2). The ROM noted further that the statute did not refer to parents of Pickle applicants and, therefore, COLA's of parents would not be disregarded.

The ROM neither conditioned its directive nor limited its impact:[11] it included COLA's of spouses, excluded those of parents. The directive was responsive to an inquiry of general concern. The directive stated that COLA's received by any ineligible spouse and deemed to the individual, not merely those ineligible spouses that were once eligible, would be disregarded in determining medicaid eligibility. The ROM did not place any qualifications upon the procedure for disregarding COLA's of ineligible spouses.

In May 1985, HHS published its new policy. The pertinent portion of the transmittal states that:

> If the applicant has a spouse who is (or was) aged, blind, or disabled, whose income will be considered in determining the applicant's SSI/SSP eligibility, the methodology should be applied to determine the amount of the spouse's COLAS which will be deducted from the couple's countable income, but only if the spouse is currently receiving title II benefits, at one time actually received SSI/SSP concurrently with title II, and received title II COLAS subsequent to his or her loss of SSI. The COLAS of the spouse which are to be deducted from countable income are those which were received by the spouse after the spouse lost SSI/SSP. If the spouse does not meet these requirements, the methodology is applied only to the applicant's income and title II COLAS.

HCFA, Program Memorandum, No. 85–4, at 4 (May 1985).

The interpretation promulgated by HCFA in its May 1985 transmittal repre-

---

**11.** The Secretary asserts that the Regional Office Manual has no legal force and dos not bind the agency. *See Schweiker v. Hansen,* 450 U.S. 785, 789, 101 S.Ct. 1468, 1471, 67 L.Ed.2d 685 (1981); *but cf. Cubanski v. Heckler,* 781 F.2d 1421, 1426–27 (9th Cir.1986) (legislative but not interpretive rules in Manual may have force of law). We do not seek here to bind the Secretary by the Manual, however. We refer to the Manual only to show that the Secretary's practical interpretation of the amendment has varied.

sents a change in policy from that set out in its 1979 Regional Office Manual. It forbids states from deducting Title II COLA's received by financially responsible spouses, except when the spouse had previously been eligible for and received SSI. A policy that has undergone change commands less deference than one of a long-standing nature. *See Secretary of Interior v. California*, 464 U.S. 312, 320 n. 6, 104 S.Ct. 656, 661 n. 6, 78 L.Ed.2d 496 (1984). In addition, an agency that changes its policy is obligated to supply a reasoned analysis for that change. *Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Insurance Co.*, 463 U.S. 29, 57, 103 S.Ct. 2856, 2873, 77 L.Ed.2d 443 (1983). The Secretary has failed to give adequate explanation.

HCFA's interpretation cannot stand. It would "frustrate the policy that Congress sought to implement." *See Southern California Edison Co. v. FERC*, 770 F.2d 779, 782 (9th Cir.1985). We conclude that the Pickle amendment requires the Secretary to disregard COLA's deemed from family members that are received after the applicant lost SSI benefits.

AFFIRMED.

WALLACE, Circuit Judge, concurring and dissenting:

I agree that, under our precedent, the plaintiff class has standing. I dissent, however, because I do not agree with the majority's holding that the Pickle Amendment, Pub.L. 94–566, Title V, § 503, 42 U.S.C.A. 1396a (note), applies to persons rendered ineligible for medicare by Title II COLA increases deemed to them from parents or from spouses who have never received SSI benefits under title XVI.

Our aim in interpreting a federal statute "is to ascertain the intent of Congress and to give effect to legislative will." *United States v. Taylor*, 802 F.2d 1108, 1113 (9th Cir.1986), *cert. denied*, —— U.S. ——, 107 S.Ct. 1309, 94 L.Ed.2d 164 (1987). To do this, we look first to the statute's language. *Blum v. Stenson*, 465 U.S. 886, 896, 104 S.Ct. 1541, 1547, 79 L.Ed.2d 891 (1984) (*Blum*). The text of the Pickle

Amendment is confusing, but it is not impenetrable. Pared down to its core elements, it mandates that medicare benefits

... be provided to any individual ... not eligible for benefits under title XVI ... if ... such individual would be ... eligible for benefits under ... title XVI except for ... income received by such individual and his spouse ... which [is] attributable to increases in ... benefits ... under title II ... which have occurred[,] ... in the case of the individual, since the last month ... such individual was ... eligible for ... benefits under ... title XVI and ... title II and, in the case of such individual's spouse[,] ... since the last month for which such spouse was ... eligible for ... benefits under ... title XVI and ... under ... title II.

The text of the amendment, therefore, contains clearly defined limitations on its scope: it preserves medicare benefits only for individuals who would otherwise lose them due to title II COLA increases "which have occurred ... since the last month" that the individual or spouse was eligible for benefits under both title XVI and title II. It does not purport to preserve the medicare benefits for individuals who would lose them due to any increases in title II COLA's, whenever occurring. The majority nevertheless develops a textual ambiguity by "extract[ing]" the "initial operative language" from the statute. This, it claims it can "fairly" do. I disagree, if "fairly" means without doing violence to the language Congress employed. I suggest that "extracting" the language is something less than fair because doing so means focusing on that portion of the amendment that contains the general statement of purpose while ignoring that portion of the very same sentence that contains the limitations on this purpose which Congress expressed simultaneously. The majority's analysis looks at the general purpose while completely ignoring the express limitations on this purpose and then claims there is an ambiguity because the broader and the narrower somehow conflict. Based on this faulty analysis, the

majority finds a "potential conflict" between the clause requiring the disregard of spousal COLA's "since the last month for which [the] spouse was ... eligible for" both title XVI and title II benefits and "the earlier language suggesting disregard of all COLA's." There is, in fact, no conflict at all when the entire sentence is read and the "earlier language" upon which the majority focuses is left in context.

The two questions before us are whether the Pickle Amendment mandates disregard of title II COLA increases payable to a spouse who has never been eligible for title XVI benefits and whether it mandates disregard of such increases payable to a parent. The Secretary contends that the statute does not mandate the disregard of COLA increases payable to persons in either category. I agree.

The language of the statute extends medicare coverage to persons who would be eligible for SSI benefits "except for amounts of income received by such individual and his spouse" which are attributable to COLA increases. It says nothing at all about persons rendered ineligible for SSI benefits because of income received as COLA increases by their parents. Applying the ancient and elementary principle of statutory interpretation *expressio unius est exclusio alterius*, expression of one thing is the exclusion of another, it is plain that the Pickle Amendment does not require the disregard of COLA increases payable to parents.

It is equally plain that the language of the Pickle Amendment does not mandate the disregard of COLA's payable to spouses never eligible for SSI. In regard to spousal COLA's, the statute mandates disregard of "income ... attributable to increases in ... [title II] benefits ... since the last ... month for which such spouse was ... eligible for (and received) benefits under ... title XVI and was entitled to a ... benefit under ... title II." Obviously, there cannot have been "increases ... since the last month" for which the spouse was "eligible for (and received)" benefits under title XVI if, in fact, the spouse has never been eligible for title XVI benefits at all. Even the majority concedes that "the specificity of the ... clause relating to spouses lends some support to the Secretary's argument."

Since it is plain and unambiguous on the face of the statute that the Pickle Amendment does not cover COLA increases of parents or of spouses never eligible for SSI, I would hold that resort to the legislative history is neither necessary nor appropriate in this case. " '[W]hen we find the terms of a statute unambiguous, judicial inquiry is complete.' " *Burlington Northern Railroad Co. v. Oklahoma Tax Commission*, 55 — U.S. ——, 107 S.Ct. 1855, 1860, 95 L.Ed.2d 404 (1987), *quoting Rubin v. United States*, 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981); *see also Tennessee Valley Authority v. Hill*, 437 U.S. 153, 184 n. 29, 98 S.Ct. 2279, 2296 n. 29, 57 L.Ed.2d 117 (1978); *Blum*, 465 U.S. at 896, 104 S.Ct. at 1548 ("we look first to the statutory language and then to the legislative history *if the statutory language is unclear*.") (emphasis added); *Mobil Sales & Supply Corp. v. Panamax Venus*, 804 F.2d 541, 542 (9th Cir.1986). The majority, however, disregards this prudent approach to statutory interpretation and argues that the legislative history of the Pickle Amendment mandates a result contrary to what I believe is the statute's plain meaning. Even assuming some review of history is appropriate in this case, when the plain language of a statute "appears to settle the question before us, ... we look to the legislative history to determine only whether there is 'clearly expressed legislative intention' contrary to that language, which would require us to question the strong presumption that Congress expresses its intent through the language it chooses." *INS v. Cardoza-Fonseca*, —— U.S. ——, 107 S.Ct. 1207, 1213 n. 12, 94 L.Ed.2d 434 (1987).

I find no such clearly expressed contrary legislative intention here. The majority relies first on the title of the amendment, "Preservation of Medicaid Eligibility for Individuals who Cease to be Eligible for Supplemental Security Income Benefits on Account of Cost-of-Living Increases in Social Security Benefits." In a previous case

interpreting the Pickle Amendment, we stated that the amendment's title should be used only to resolve ambiguities, not to create them, and that it "should not be used to vary the plain meaning of the statute." *Lynch v. Rank,* 747 F.2d 528, 532 (9th Cir.1984), *modified,* 763 F.2d 1098 (9th Cir.1985) (*Rank*). Nevertheless, even if we did look to the title for a clear manifestation of congressional purpose contrary to the plain meaning of the statute, we would not find one. The title itself is ambiguous in the context before us since it is unclear whether it refers to the preservation of medicaid eligibility for *all* individuals who cease to be eligible for SSI benefits or only for *certain* such individuals. All the title indicates unambiguously is that the amendment was intended to preserve the benefits for someone.

Nor does the sparse language of the Senate report upon which the majority relies, S.Rep. No. 1265, 94th Cong., 2d Sess., *reprinted in* 1976 U.S.Code Cong. & Admin.News 5997–6032 (Senate Report), evidence a "clearly expressed legislative intention" contrary to the amendment's plain meaning. The report states that "the committee bill would provide that *no recipient of SSI would lose eligibility* for medicaid as the result of the operation of the cost-of-living benefit increase provision under title II." Senate Report at 6001 (emphasis added). Similar statements appear later in the report, Senate Report at 6022, and in the associated House Conference Report, No. 94–1745, 94th Cong., 2d Sess., *reprinted in* 1976 U.S.Code Cong. & Admin.News 6033, 6047 (House Conference Report). These statements that *"no* recipient of SSI would lose eligibility," however, cannot be taken literally. It is undisputed that the amendment does not preserve the medicaid eligibility of individuals who lost SSI eligibility during the six month period between the passage of the bill and April 1977—the start up date that the bill provides—let alone those who lost eligibility before the bill's enactment. *See* House Conference Report at 6047. Clearly *some* recipients of SSI could lose eligibility during the period before April 1977, but Congress, despite the breadth of the language in its reports, obviously did not intend to help them. It is no safer to assume solely on the basis of the same general language that Congress intended to mandate disregard of COLA increases accruing to parents or spouses.

None of the brief passages in the legislative history specifically mention anything about COLA increases payable to spouses or parents. It is therefore unclear from the legislative history alone whether Congress meant COLA's payable to these groups to be disregarded, or whether Congress had even considered the question. The congressional reports are uninformative and ambiguous on this point. In fact, only from the text of the amendment itself do we learn that Congress intended to mandate disregard of COLA increases accruing to spouses who *had* once been eligible for SSI. The same statutory text indicates plainly that COLA increases accruing to parents and to spouses never eligible for SSI are *not* to be disregarded. The legislative history contains nothing that we can reasonably treat as a "clearly expressed legislative intention" to the contrary.

Finally, the majority contends that Congress cannot have intended what the plain meaning of the statute indicates because "application of the plain meaning would lead to absurd results." The result here is clearly asymmetrical, and is perhaps anomalous, as the majority suggests. As we observed in *Rank,* however, "[i]nequities abound at the fringes of the Pickle Amendment." *Rank,* 747 F.2d at 536. But this does not mean that we can ignore the statute's plain language. "[I]f one must ignore the plain language of a statute to avoid a possibly anomalous result, ' "[t]he short answer is that Congress did not write the statute that way." ' " *North Carolina Department of Transportation v. Crest Street Community Council, Inc.,* —— U.S. ——, 107 S.Ct. 336, 341, 93 L.Ed.2d 188 (1986), *quoting Garcia v. United States,* 469 U.S. 70, 79, 105 S.Ct. 479, 83 L.Ed.2d 472 (1984), *quoting Russello v. United States,* 464 U.S. 16, 23, 104 S.Ct. 296, 300, 78 L.Ed.2d 17 (1983).

The Pickle Amendment does not mandate disregard of COLA increases payable to

parents or to spouses never eligible for SSI. The text of the statute is clear, the legislative history evidences no clear congressional intent to the contrary, and the asymmetry of the result is simply not pertinent. I would reverse.