905 F.2d 146
 134 L.R.R.M. (BNA) 2551, 115 Lab.Cas. P 10,126
 SONICRAFT, INCORPORATED, Petitioner, Cross-Respondent,
v.
NATIONAL LABOR RELATIONS BOARD, Respondent, Cross-Petitioner,
and
Warehouse, Mail Order, Office, Technical & Professional
Employees Union Local 743, International
Brotherhood of Teamsters, Intervening
Respondent, and Intervening-Petitioner.
 Nos. 89-2458, 89-2694.
 United States Court of Appeals,
Seventh Circuit.
 Argued May 9, 1990.
Decided June 12, 1990.
 
 Gerard C. Semetena, Abramson & Fox, Garland W. Watt, Stephen X. Lythcott, Kathleen Lightfoot, Chicago, Ill., for petitioner.
 Aileen A. Armstrong, John C. Truesdale, Julie Broido, Linda J. Dreeben, Appellate Court, Enforcement Litigation, N.L.R.B., Washington, D.C., Elizabeth Kenney, N.L.R.B., Chicago, Ill., for respondent.
 Joel A. D'Alba, Marvin Gittler, Asher, Gittler & Greenfield, Chicago, Ill., for intervenor, Warehouse, Mail Order, Office, Technical and Professional Employees Union Local 743, Intern. Broth. of Teamsters, Chauffeurs, Warehousemen and Helpers of America.
 Margo R. Newman, Asher, Gittler & Greenfield, Chicago, Ill., for Sonicraft, Inc., Cross-Respondent.
 Before POSNER and FLAUM, Circuit Judges, and WILL, Senior District Judge.*
 POSNER, Circuit Judge.
 
 
 1
 The Labor Board asks us to enforce, and the Sonicraft corporation asks us to set aside, an order by the Board (295 N.L.R.B. No. 67 (June 15, 1989)) finding that Sonicraft had violated the National Labor Relations Act by threatening economic retaliation against its workers during a representation election campaign and by carrying out the threat after the union (despite the company's threats) won the election. The retaliation operated as follows. The company laid off 50 of the 92 employees in the bargaining unit just two days after the election, and quickly began recalling all but those employees who had been vocal supporters of the union--the latter being placed on a "no-no list" and either never recalled or recalled later than they would have been but for their support of the union.
 
 
 2
 The principal issue is the statute of limitations. The Act provides, in section 10(b), that "no complaint shall issue based upon any unfair labor practice occurring more than six months prior to the filing of the charge." 29 U.S.C. Sec. 160(b). The election campaign, the election, and the layoffs took place in 1981. Early in 1982, within the six months permitted by the statute, the union filed with the Board a charge encompassing all the allegations later included in the complaint issued by the Board's General Counsel. On April 29, the Regional Director (a subordinate of the General Counsel) dismissed the charge insofar as it alleged that the layoff had been unlawful and issued a complaint limited to pre-election intimidation and to the sequence in which certain employees had been recalled after the layoffs that followed the election. The union appealed the dismissal of the layoff portion of the charge to the General Counsel, the final authority for the issuance of complaints by the Board, but without success. However, additional evidence coming to light, on December 1 the General Counsel moved the administrative law judge presiding over the case for permission to file an amended complaint restoring the allegations about the layoff, and after an appeal to the Board the amendment was allowed and the amended complaint was issued on January 20, 1983. The General Counsel's motion had come almost a year after the layoff had taken place and more than six months after the selective recalls: too late, according to Sonicraft. The Board disagreed, ruling in the decision under review that because the restored allegations were closely related to the allegations that had been retained, section 10(b) did not bar the amendment.
 
 
 3
 In addition to establishing a period of limitations, section 10(b) authorizes the Board to amend a complaint at any time before entering its final order. There is nothing here or elsewhere in the Board's statutes or rules about relation back; but the usual rule, codified for example in Rule 15(c) of the Federal Rules of Civil Procedure, is that, for purposes of determining whether the statute of limitations has run, an amendment to a complaint relates back to the original complaint if it arises out of the dispute that gave rise to the original complaint. Displaying its usual preference for common law over express rulemaking, the Board has long had a doctrine, parallel to that of Rule 15(c), that an amendment which is "closely related" to the original charge relates back to the date of the original complaint. NLRB v. Complas Industries, Inc., 714 F.2d 729, 732-33 (7th Cir.1983) (per curiam); NLRB v. Dinion Coil Co., 201 F.2d 484, 491 (2nd Cir.1952). The allegations in this case concerning the layoffs are closely related to the allegations of discriminatory recall; the recalls began only four days after the layoffs, and the layoffs and the recalls were the one-two punch in the company's scheme of retaliation. The company points out, however, that in Ducane Heating Corp., 273 N.L.R.B. 1389, 1391 (1985), enforced without opinion, 785 F.2d 304 (4th Cir.1986), a three-member panel of the Board ruled that a dismissed or withdrawn charge "ceases to exist" and therefore cannot be revived outside the six-month limitations period unless the respondent is guilty of fraudulent concealment; the Board, however, declined in this case to rule that Sonicraft had been guilty of that. One of the panel members in Ducane found it unnecessary to decide whether the reinstatement of one of the dismissed charges might be supportable under the "closely related" doctrine, id. at 1391 n. 9; the other two members did not mention the issue.
 
 
 4
 If Ducane stood alone, we would have the unfortunate, and unfortunately not uncommon, situation in which the Board limits or even repudiates a precedent in silence. For in deciding that the layoff charges were not time-barred in this case, the Board did not attempt to distinguish Ducane. And although one member of the panel in Ducane had thought it unnecessary to decide whether the closely-related doctrine might permit the General Counsel to reinstate a dismissed charge, the majority opinion (which is to say all but note 9) did not respond to the suggestion and could be thought, by the sweeping language it employed, to have confined the closely-related doctrine to cases in which the belated amendment adds an allegation not previously dismissed or withdrawn.
 
 
 5
 But Ducane does not stand alone. In Redd-I Inc., 290 N.L.R.B. No. 140, 129 L.R.R.M. 1229, 1231 (1988), the Board limited Ducane to "an attempt to reinstate the dead allegations themselves without reference to any other pending timely charge." Sonicraft argues that this is not a reasoned distinction, because dead is dead; and it adds that Redd-I involved withdrawn rather than, as in both this case and Ducane, dismissed allegations. Our view is different. Apart from footnote 9, Ducane makes no reference to the closely-related doctrine; and an administrative agency, unlike a court, is not permitted to overrule its doctrines in silence--it must explain itself. Motor Vehicle Manufacturers Ass'n v. State Farm Mutual Automobile Ins. Co., 463 U.S. 29, 48, 57, 103 S.Ct. 2856, 2869, 2874, 77 L.Ed.2d 443 (1983); Wilkins v. Sullivan, 889 F.2d 135, 141 (7th Cir.1989); International Union, UAW v. NLRB, 802 F.2d 969, 974 (7th Cir.1986); Local 1384, UAW v. NLRB, 756 F.2d 482, 492 (7th Cir.1985); Continental Web Press, Inc. v. NLRB, 742 F.2d 1087, 1093-94 (7th Cir.1984); Lynch v. Dawson, 820 F.2d 1014, 1021 (9th Cir.1987). (This of course is the heart of Sonicraft's argument.) The presumption is therefore that the closely-related doctrine survived Ducane, and Redd-I makes this explicit. The distinction between related and unrelated allegations makes perfectly good sense and does not violate the principle, urged by Sonicraft, of the finality of death. A dismissed allegation stays dead, all right, but the complaint is not confined within the boundaries of the original charge.
 
 
 6
 It is true that in this case the complaint was amended after the hearing (that is, the trial) before the administrative law judge began. So belated an amendment could violate a respondent's right to a fair hearing. But the issue in this case is not procedural fairness. Sonicraft does not argue that the last-minute amendment of the complaint impaired its ability to defend itself; and there is no general rule cutting off the time for amending a complaint. Compare Fed.R.Civ.P. 15(b), which permits an amendment that conforms the complaint to the evidence to be made even after judgment. Sonicraft argues, rather, that the amendment was barred by the statute of limitations--and would have been even if made months earlier. We reject the argument. If the allegations concerning the motive for the layoffs had not been included in the union's charge, the complaint could have been amended on December 1, 1982, to add them, without running afoul of section 10(b); as we said, they grow out of the same retaliatory scheme, which had two stages--layoff, followed by selective recall. The only possible significance of the dismissal of a closely related charge is that it might lull a respondent into thinking he didn't have to worry any longer about defending himself against that charge. But this possibility depends on the rule; after Redd-I it is plain that he does still have to worry, provided the dismissed allegations are closely related to the remaining ones. The trial began on October 6, 1982, long before the decision in Redd-I, or for that matter in Ducane. (The delays in this proceeding have been appalling.) But Sonicraft does not argue that the belated amendment of the complaint impeded its defense, or prejudiced it in any other way.
 
 
 7
 Redd-I involved a withdrawn charge; this case, like Ducane, involves a dismissed one. The Board applied Redd-I in the present case without remarking this difference. Is this, perhaps, an example of the Board's changing course without explanation? It is not. The only conceivable difference between withdrawal and dismissal is that the latter action might have a greater lulling effect, since reinstatement would require the General Counsel to change his mind. But Sonicraft does not argue lull. The Board is not required to elucidate the obvious. And a case, albeit one that the Board failed to cite either in its opinion or in its brief to us, expressly holds that Redd-I applies to dismissed as well as to withdrawn charges. Stern Entertainment System Inc., 290 N.L.R.B. No. 167, 130 L.R.R.M. 1147, 1149 n. 3 (Sept. 23, 1988). See also Columbia Textile Services Inc., 293 N.L.R.B. No. 127, 131 L.R.R.M. 1241, 1242 (May 15, 1989). The last link in the chain of precedent from Ducane to the present case has been forged.
 
 
 8
 The merits of Sonicraft's challenge to the Board's order require little discussion. Sonicraft attacks the findings of the administrative law judge with great vigor and pertinacity, but the evidence that the layoffs and selective recalls were motivated by hostility to the union and its supporters is overwhelming and also supports the inference of intimidation that the administrative law judge drew from campaign statements that in another setting might be thought within the bounds of lawful campaign rhetoric. This was a straightforward case; it is a pity that it has taken eight years to resolve.
 
 
 9
 We reject, finally, Sonicraft's contention that Wards Cove Packing Co. v. Atonio, --- U.S. ----, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989), abrogates the Labor Board's long-standing rule, endorsed in NLRB v. Transportation Management Corp., 462 U.S. 393, 103 S.Ct. 2469, 76 L.Ed.2d 667 (1983), that once the General Counsel shows that hostility to unionization was a factor in a layoff, the company has the burden of persuading the Board that the layoff would have occurred anyway. The issue in Wards Cove was the burden of persuasion in disparate-impact cases under Title VII of the Civil Rights Act of 1964--precisely cases in which discriminatory animus is not shown, making questionable the doctrine, repudiated by that decision, that once an innocent practice is shown to burden a protected group disproportionately, the burden of persuasion shifts to the employer to show that the practice is necessary to his business. If analogies to the present case are to be sought in civil rights law, the closest will be found in Price Waterhouse v. Hopkins, --- U.S. ----, 109 S.Ct. 1775, 1788, 104 L.Ed.2d 268 (1989), which holds that in a mixed-motive case the burden of negating causation is on the employer. In fact that is the same rule as the rule of Transportation Management, cited approvingly in Hopkins, 109 S.Ct. at 1788; and as no one suggests that Wards Cove overruled Price Waterhouse, we may assume that Transportation Management survives Wards Cove as well.
 
 
 10
 It is true that Wards Cove cites Transportation Management for the proposition that certain civil rights cases that might have appeared to shift the burden of persuasion to the employer really had meant only to shift the burden of production to him, leaving the burden of persuasion on the plaintiff, the employee, corresponding to the General Counsel of the Labor Board in the present case. 109 S.Ct. at 2126. But the Court seems to have been referring to a fine-spun distinction in Transportation Management, found also in Price Waterhouse, rather than repudiating either decision. Transportation Management explains that the burden of proving the employer's hostility to the union never shifts, but that even if the General Counsel carries that burden the employer can defend by showing that the discharge or layoff would have taken place anyway, for noninvidious reasons. In other words, the employer has an affirmative defense (no causation), as to which of course he bears the burden of persuasion, but so far as the main case is concerned the burden of persuasion never shifts. And it is, we think, this constancy of the burden of persuasion in the plaintiff's case that the Court in Wards Cove was pointing to by its "cf. e.g." reference to Transportation Management. We do not think that the reference was intended to revolutionize labor law. Once the General Counsel in our case demonstrated the company's hostility to the union's attempt to organize its workers, the company could defend only by showing that it would have made the layoffs anyway. This was an affirmative defense. The company had the burden of persuasion, and failed to carry it.
 
 
 11
 Sonicraft raises other issues, but they are singularly without merit and it is merciful to pass over them in silence. The Board's order will be
 
 
 12
 ENFORCED.
 
 
 
 *
 Hon. Hubert L. Will, of the Northern District of Illinois, sitting by designation